IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ALLYSON RASKIN,**     § | |
| Plaintiff,     § | |
| § | |
| v.     § | Civil Action No. 3:22-CV-2012-E-BH |
| § | |
| **HONORABLE CLAY JENKINS,**     § | |
| **DALLAS COUNTY JUDGE and**     § | |
| **MICHAEL SCARPELLO,**     § | |
| **DALLAS COUNTY ELECTIONS**     § | |
| **ADMINISTRATOR,**     § | |
| Defendants.     § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, *Defendants Clay Jenkins and Michael Scarpello's Rules 12(b)(1) and 12(b)(6) [sic]; and Motion to Dismiss*, filed September 19, 2022 (doc. 3), should be **GRANTED in part**; *Petitioner's Opposed Motion for Preliminary Injunction Against Electronic Voting Systems*, filed October 4, 2022 (doc. 10), should be **DENIED**; and the case should be **DISMISSED** for lack of subject matter jurisdiction.

### I.  BACKGROUND

Allyson Raskin (Plaintiff) is a voter registered in Dallas County, Texas, who voted in the November 2020 election and intends to vote in the November 2022 election. (doc. 1-3 at 1-55.)[2] She sues Dallas County Judge Clay Jenkins and Dallas County Elections Administrator Michael Scarpello (Defendants) under 42 U.S.C. §§ 1983 and 1985 for violation of her civil rights, alleging that they knowingly administered elections with voting system equipment that was not properly

---

[1]By *Special Order 3-251*, this *pro se* case has been automatically referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

certified, unreliable, and vulnerable to hacking and unauthorized access in violation of state and federal election laws. (*Id.* at 32-33.)

Plaintiff's 55-page state court petition, which includes a 490-page appendix, contends that all electronic voting machines approved by the Texas Secretary of State (Secretary) for public elections in Texas must be properly certified by the federal Election Assistance Commission (EAC) in accordance with the Help America Votes Act (HAVA). (*Id.* at 27-28.)  Even though the touchscreen voting machines used in Dallas County during the November 2020 election, which will also be used for future elections, were certified by the EAC and approved by the Secretary, the certifications were allegedly invalid because the EAC has not been complying with HAVA requirements since 2017. (*Id.* at 25-26.)  It claims that a few weeks before the 2020 election, the Secretary discovered that the manufacturer of the Dallas County voting machines installed software updates that did not match the software previously certified by the EAC, and that the machines also "failed hash-validation testing (a mathematical algorithm that maps data generated from an installed copy, and then compares that data to the algorithm of the software certified by the EAC)." (*Id.* at 10-11.) After investigating whether the software installation and validation methods made the updated machines "vulnerable to installation of malicious or otherwise unapproved software", the Secretary approved the updated machines despite concerns about the hash verification process. (*Id.* at 10-13.)

The petition alleges that "[c]omputerized voting systems leave an open door for votes to be changed, deleted, or fabricated in violation of constitutional requirements," and that "[e]xperts across the political spectrum have long sounded the alarm about the inherent insecurity and lack of transparency in computerized voting systems such as those used in Texas." (*Id.* at 1-3.) It includes "expert witness" affidavits and sworn declarations filed in similar electronic voting machine

lawsuits, which state, in relevant part that: the EAC failed to abide by federal election standards and has colluded with "foreign powers to manipulate the outcome of the 2020 election"; the electronic voting systems used in public elections nationwide were not properly certified by the EAC; electronic voting machines are vulnerable to cyber attacks; there have been "multiple attempts to interfere with and undermine the election process through cyberspace"; and remote access operations and malware could be used to access "electronic election infrastructure" and change votes. (docs. 1-3 at 27-32; 1-4; 1-5 at 1-42.) Also included are two unattributed documents that identify "issues related to the accreditation of election voting systems", as well as "foreign countries involved in election infrastructure, manipulation, and supply chain management." (docs. 1-3 at 32; 1-5 at 43-81.) Plaintiff's sworn declaration[3] states that she had to use "illegally certified machines" to vote in the 2020 election and is "not confident that [her] vote counted." (*Id.* at 55.) It also states that she was not allowed to "poll watch" during the 2022 primary election or to observe the manual count of ballots at a "random audit" after a municipal election, and that two election judges told her that "the data in the ePoll book during the 2022 Primary election was changing all throughout the day" and "did not look right." (*Id.*)

The petition generally alleges that Plaintiff and all Dallas County citizens and registered voters who voted in 2020 and intend to vote in the upcoming 2022 elections "have a fundamental right to cast a ballot and vote in a legal and fair election" and "constitutionally protected interests in the benefits that come from the right to vote and not being subject to the illegal voting systems/equipment, software, and modifications"; that Defendants "knowingly approved voting system/equipment, software and modifications, which unlawfully deprives [them] of these and other

---

[3]Plaintiff's "Affidavit" was not notarized or sworn before a notary; it was expressly made under penalty of perjury pursuant to 28 U.S.C. § 1746. (*See* doc. 1-3 at 55.)

3

constitutionally protected interests without due process of law"; and that they "were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering forced contracts with representatives through deceptive practices and fraudulent certifications." (*Id.* at 46-50.)

Plaintiff's petition, filed in state court on August 2, 2022, seeks relief under § 1983 for violations of procedural due process under the First, Fourteenth, and Fifteenth Amendments and article I, §§ 17, 19 of the Texas Constitution; violations of equal protection under the Fourteenth Amendment, article I, § 3 of the Texas Constitution, and 18 U.S.C. § 245; deprivation of civil rights under article I, §§ 13, 19 of the Texas Constitution; and voting rights violations under the First and Fourteenth Amendments, article VI, § 2 of the Texas Constitution, 52 U.S.C. § 20511(2)(A)-(B) of the National Voter Registration Act, and 52 U.S.C. § 10101 of the Voting Rights Act, as well as relief under 42 U.S.C. § 1985 for conspiracy to violate civil rights. (*Id.* at 46-50.) It also asserts standalone claims for the deprivation of constitutional rights under article I, §§ 13, 19 of the Texas Constitution and for declaratory and injunctive relief under 28 U.S.C. § 2201 and Texas Civil Practice & Remedies Code §§ 37.003, 37.004(a)-(b). (*Id.* at 49-51.)  It seeks a judgment declaring that Defendants' approval of electronic voting machines was unconstitutional and in violation of state and federal laws; a court order that vacates and removes all uncertified and illegal voting systems, implements paper ballot voting and a hand-counting audit system, and requires the inspection of past ballots; and an injunction that prohibits the use of electronic voting machines in future elections and the destruction of election records. (*Id.* at 52-54.)

After removing this case to federal court, on September 19, 2022, Defendants moved to

4

dismiss it. (doc. 3.)[4] Plaintiff responded on September 27, 2022. (doc. 5.) On October 4, 2022, she filed a motion for a preliminary injunction to prohibit the destruction of election records and to bar Defendants from "using computerized equipment to administer the collection, storage, counting, and tabulation of votes in any election indefinitely until proper investigations and reconciliation of the elections for 2020 general, 2021 special, and 2022 primaries are conducted." (doc. 10.)

## II.  RULE 12(b)(1)

Defendants first move to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction. (doc. 3 at 12-15.)

**A.     Legal Standard**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the

---

[4] Defendants note "that the following cases may be considered related cases because they all arise from a common nucleus of operative facts with" this case: *Strongin et al. v. Scott et al.*, Case No. 4:22-CV-00576-P-BJ (N.D. Tex.); *White v. Garcia et al.*, Case No. 4:22-CV-00746-O-BP (N.D. Tex.); and *Couchman et al. v. Callanen et al.*, Case No. 5:22-CV-929-OLG (W.D. Tex.). (doc. 3 at 2-3.)

subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*.[5]

Here, Defendants rely solely on Plaintiff's state court petition in support of their motion. The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13.

---

[5]It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Regardless of whether the plaintiff is proceeding *pro se* or represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

B.   **Standing**

Defendants argue that "Plaintiff cannot meet the burden of proof to establish standing to complain of the alleged acts in the Petition nor to seek the requested relief therein, both of which deprive this Court of subject-matter jurisdiction." (doc. 3 at 12.)

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Like other jurisdictional requirements, this requirement is "not subject to waiver," *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996), and the Supreme Court "insist[s] on strict compliance" with it, *Raines*, 521 U.S. at 819. "Even when standing is not raised by the parties, the Court must, where necessary, raise the issue *sua sponte*." *Reed v. Rawlings*, No. 3:18-CV-1032-B, 2018 WL 5113143, at *3 (N.D. Tex. Oct. 19, 2018) (citing *Collins v. Mnuchin*, 896 F.3d 640, 654 n.83 (5th Cir. 2018)); *see also Legacy Cmty. Health Servs., Inc.*, 881 F.3d at 366 n.2 (citing *K.P.*, 627 F.3d at 122). Courts are also to assess a plaintiff's "standing to bring each of its claims against each defendant." *Coastal Habitat Alliance v. Patterson*, 601 F. Supp.2d 868, 877 (W.D. Tex. 2008) (citing *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001)), *aff'd by* 385 F. App'x 358 (5th Cir. 2010)).

To satisfy the prerequisites of Article III standing, "[the] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements[, and when] a case is

7

at the pleading stage, the plaintiff must 'clearly... allege facts demonstrating' each element." *Id.* (citations omitted); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) ("The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."). While "'at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing," *Stallworth v. Bryant*, 936 F.3d 224, 230 (5th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560), "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing," *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). "[I]f the plaintiff does not carry his burden clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate." *Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560) (quotations omitted). A "particularized" injury "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. A "concrete" injury actually exists, which means it is real and not abstract. *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)).

C.  **Generalized Grievances**

Defendants contend that Plaintiff has not established standing to sue because she alleges only

8

generalized grievances about elections in Dallas County, rather than particularized injuries to her that are separate from the public at large. (doc. 3 at 1, 13.)

The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *see also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) ("A generalized grievance is a harm shared in substantially equal measure by all or a large class of citizens.") (citation omitted). In voting rights cases, plaintiffs must assert "a plain, direct and adequate interest in maintaining the effectiveness of their votes," and "not merely a claim of the right possessed by every citizen to require that the government be administered according to law", to establish standing to sue. *Baker v. Carr*, 369 U.S. 186, 208 (1962) (citations and internal quotations omitted).

The United States Court of Appeals for the Fifth Circuit recently held that a claim "that drive-thru voting hurt the 'integrity' of the election was far too generalized to warrant standing." *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (quoting *Lance v. Coffman*, 549 U.S. 437, 441-42 (2007) (per curiam). In that case, a Harris County voter and three candidates in the 2020 election sought a preliminary injunction to enjoin drive-thru voting in Harris County for future elections, contending that it violated the Equal Protection Clause and the Elections Clause of the United States Constitution. The district court found that the plaintiffs' "lack of a particularized grievance is fatal to their claim under the Equal Protection Clause" because their "general claim that Harris County's election is being administered differently than Texas's other counties does not rise

9

to the level of the sort of particularized injury that the Supreme Court has required for constitutional standing in elections cases." *Hotze v. Hollins*, No. 4:20-CV-03709, 2020 WL 6437668, at *1 (S.D. Tex. Nov. 2, 2020), *aff'd in part and vacated in part*, 16 F.4th 1211 (citations omitted). It also held that the irreparable harm alleged by the plaintiffs, i.e., that "the Texas Election Code has been violated and that violation compromises the integrity of the voting process . . . is a quintessential generalized grievance: the harm is to every citizen's interest in proper application of the law." *Id.* at *2 (citations omitted). Concluding that the plaintiffs ultimately failed to show they had "any specialized grievance beyond an interest in the integrity of the election process, which is 'common to all members of the public'", it denied their motion for preliminary injunction. *Id.* (quoting *United States v. Richardson*, 418 U.S. 166, 176-77 (1974)). The Fifth Circuit agreed, affirming the denial of injunctive relief and dismissal of plaintiffs' claims. *Hotze*, 16 F.4th at 1124 (citing *Lance*, 549 U.S. at 441-42).

Here, the petition states that Plaintiff "(and all Texas citizens) have a fundamental legal right to the clearly established principles of election equality, integrity, accurateness, honesty, and justice", and that "[t]his case seeks to enforce these clearly established fundamental principles of Texas law." (doc. 1-3 at 6.) It generally alleges that Defendants violated state and federal law because they allowed, and continue to allow, voting machines to be used in Dallas County elections that are not properly certified and are vulnerable to hacking and technical glitches, and that the fundamental rights of all Texas citizens to cast ballots and vote in a legal and fair election have and will be infringed if they are forced to vote on electronic voting machines. (*Id.* at 4-5.) It seeks declaratory and injunctive relief "for preservation of records and against electronic voting systems, barring Defendants from using computerized equipment to administer the collection, storage,

10

counting, and tabulation of votes in any election indefinitely until proper investigations and reconciliation of the elections for 2020 general, 2021 special, and 2022 primaries are conducted." (*Id.* at 2.)

As in *Hotze*, Plaintiff has not asserted "any specialized grievance beyond an interest in the integrity of the election process, which is 'common to all members of the public.'" 2020 WL 6437668, at *2 (quoting *Richardson*, 418 U.S. at 176-77). Although this case does not involve drive-through voting, the allegations in this case concerning uncertified voting machines and vulnerabilities and deficiencies with electronic voting systems allege an injury widely shared by every Dallas County voter, just like the alleged injury widely shared by every Harris County voter in *Hotze*. "[S]uch a 'generalized grievance'—no matter how sincere—is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 694 (2013).

In her response, Plaintiff generally argues that she has standing as a voter because she "has a vested interest in protecting the quality, accuracy, and effectiveness of the individual votes cast by [her] to ensure the representative leaders in society are lawfully elected by the consent of the governed for the protection against tyranny and for healthy maintenance of our Republican form of government bestowed upon us by our ancestors and for the advantage of our descendants." (doc. 5 at 16.) "[S]tanding to sue may not be predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Lance*, 549 U.S. at 441 (quotation omitted). As explained, a plaintiff's generalized grievance about the proper application of the Constitution and laws by government officials "does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74. Plaintiff also argues that she "has endured her own individualized, tangible, specific injuries as a result of election maladministration and

11

malfeasance over the series of elections since 2020 due to leadership failing to uphold and defend the Constitution." (doc. 5 at 17.) This argument does not identify an alleged injury that is distinct or different from the alleged injuries of other registered voters, however. As discussed, "an alleged injury based solely on an allegation 'that the law . . . has not been followed' amounts to an 'undifferentiated, generalized grievance about the conduct of government' insufficient to establish standing." *Hotze*, 16 F.4th at 1124 n.2 (quoting *Lance*, 549 U.S. at 442).

Citing *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 5 (Tex. 2011), the petition generally asserts that "[v]oters have standing . . . to challenge an unconstitutional voting system." (doc. 1-3 at 9.) The Texas Supreme Court's decision in *Andrade* did not concern Article III standing. *See Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022) ("[S]tanding in federal court is determined *entirely by Article III* and depends in no degree on whether standing exists under state law.") (citation omitted) (emphasis original). It is also distinguishable. In *Andrade*, Travis County voters sued the Secretary, alleging that the certification of electronic voting machines for county elections violated the Texas Election Code and the Texas Constitution. 345 S.W.3d at 6. They alleged, among other things, that the voting machines upon which they were forced to vote were susceptible to fraud and prone to malfunction, and that other voters who used paper or absentee ballots had a greater level of protection against such fraud or system malfunction. The court found that "this disparity gives them standing to sue for an equal protection violation" because they asserted "'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'" *Id.* at 10-11 (quoting *Baker*, 369 U.S. at 207-08).[6]

In this case, however, Plaintiff does not allege specific facts in support of her equal

---

[6]The supreme court determined that plaintiffs lacked standing on their other claims because they were generalized grievances about the lawfulness of government acts. *See Andrade*, 345 S.W.3d at 14-15.

12

protection claim under the Texas Constitution, but only general allegations that all registered voters have "a fundamental right to cast a ballot and vote in a legal and fair election." (doc. 1-3 at 48.)[6] Unlike the plaintiffs in *Andrade*, Plaintiff does not allege that her vote was or will be treated differently from other votes, but that all voters who use electronic voting machines are at risk of their votes not getting counted properly. "'The rule against generalized grievances applies with as much force in the equal protection context as in any other,' and 'only ... those persons who are personally denied equal treatment' will have standing." *Andrade*, 345 S.W.3d at 10 n.18 (quoting *United States v. Hays*, 515 U.S. 737, 743-44 (1995) (quotations omitted)).

Because Plaintiff does not satisfy the requirements for Article III standing, her claims against Defendants should be dismissed without prejudice for lack of subject matter jurisdiction.[7]

### III. PRELIMINARY INJUNCTION

Plaintiff moves for a preliminary injunction to prohibit the use of electronic voting systems in future elections. (*See* doc. 10.)

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008); *see also Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). To obtain a preliminary injunction, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) [that] the threatened injury to the movant outweighs the

---

[6]The petition asserts claims against Defendants for violating her due process and equal protection rights under the United States Constitution and Texas Constitution and for violations of state and federal laws, but Plaintiff generally asserts the same standing arguments for all her claims. (*See* doc. 5 at 15-18.)

[7]Because Defendants' motion to dismiss for lack of subject matter jurisdiction should be granted, and this case is subject to dismissal without prejudice, it is unnecessary to reach their alternative grounds for dismissal on the merits under Rule 12(b)(6). (*See* doc. 3 at 15-22.)

13

threatened harm to the party sought to be enjoined; and (4) [that] granting the injunctive relief will not disserve the public interest." *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017) (citation and quotation omitted). The party seeking the preliminary injunction bears the burden of persuasion on all four requirements. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009). If the movant fails to carry the "heavy burden" to show each of the four prerequisites, a preliminary injunction is not warranted. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

As discussed, Plaintiff lacks standing to bring this case and all her claims against Defendants are subject to dismissal for lack of subjection matter jurisdiction. She therefore cannot establish a likelihood of success on the merits of any of her claims, and her motion for a preliminary injunction should be denied.

## IV. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend her complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. Nonetheless, a court may appropriately dismiss an action with

14

prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended her petition since filing this action, and it does not appear that she has alleged her best case against Defendants. She should accordingly be offered an opportunity to amend her petition to address the jurisdictional deficiencies.

## V.  RECOMMENDATION

Plaintiff's motion for preliminary injunction should be **DENIED**. If Plaintiff does not file an amended complaint within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED in part**, and Plaintiff's claims should be **DISMISSED without prejudice**. If Plaintiff timely files an amended complaint, however, Defendants' motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 2nd day of November, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE