UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ALLYSON RASKIN,**<br>**ANNE STONE,**<br>**BARRY WERNICK**<br>         *Petitioners*,<br><br>**v.**<br><br>**HONORABLE CLAY JENKINS,**<br>**DALLAS COUNTY JUDGE and**<br>**MICHAEL SCARPELLO,**<br>**DALLAS COUNTY**<br>**ELECTIONS**<br>**ADMINISTRATOR,**<br>         *Respondents*. | Civil Action No. 3:22-CV-2012-E-BH |

---

## FIRST AMENDED COMPLAINT

---

*TO THE HONORABLE COURT:*

COME NOW, Petitioners Allyson Raskin, Barry Wernick, and Anne Stone, (hereinafter collectively referred to as "Petitioners"), file this Amended Complaint by order of the Court (ECF no. 15) and to add a Petitioner, Anne Stone, to the cause (Fed. R. Civ. P. Rule 15), permanently barring Respondents, Honorable Clay Jenkins and Michael Scarpello, from using Electronic Voting Systems (EVS) and related equipment to administer the collection, storage, counting, and tabulation of votes in any election and calling for proper investigations and reconciliation of the 2020 general, 2021 special, 2022 primaries, and 2022 November mid-term elections.

Allyson Raskin

5533 Meletio Lane

Dallas, TX 75230

214-263-5802

essentiallyally@gmail.com

Anne Stone

4308 Alta Vista Ln.

Dallas, TX 75229-2837

(214) 532-4561

annelindastone@gmail.com

Barry Wernick

6544 Dykes Way

Dallas, TX 75230

(917) 604-5895

bazza@barrywernick.com

*Pro se* Petitioners

JOHN CREUZOT
District Attorney
Dallas County, Texas
Ben L. Stool
Assistant District Attorney
Texas Bar No. 19312500
ben.stool@dallascounty.org

Barbara S. Nicholas
Assistant District Attorney
Texas Bar No. 24032785

barbara.nicholas@dallascounty.org

Jason G. Schuette
Assistant District Attorney
Texas Bar No. 17827020
jason.schuette@dallascounty.org

District Attorney's Civil Division
500 Elm Street, Suite 6300
Dallas, Texas 75202
214.653.7358 telephone
214.653.6134 facsimile
ATTORNEYS FOR DEFENDANTS

# Table of Contents

**TABLE OF AUTHORITIES** ...............................................................................**4**

**IV. ISSUES PRESENTED** ...............................................................................**18**

    A. JUDICIAL NOTICE .....................................................................................19

**VI. ARGUMENTS AND AUTHORITIES** ..................................................**29**

    A. REMEDIABLE RIGHTS .............................................................................38

    B. FAILURES, NEGLECT, AND OFFENSIVE VIOLATIONS.....................40

    C. EMERGENCY RELIEF IS NECESSARY ................................................42

    D. COUNTS ....................................................................................................44

        COUNT I - Violation of Due Process ......................................................44

        COUNT II - Violation of Equal Protection Clause..................................46

        COUNT III – Deprivation of Civil Rights ...............................................48

        COUNT IV – Deprivation of Constitutional Rights ...............................49

        COUNT V – Voting Rights Violation.......................................................50

        COUNT VI – Civil Action for Deprivation of Rights .............................52

        COUNT VII – Declaratory Judgment.......................................................53

**CERTIFICATE OF SERVICE**...................................................................**60**

**Affidavit**......................................................................................................**61**

**Affidavit**......................................................................................................**62**

**Affidavit**......................................................................................................**64**

**APPENDIX**..................................................................................................**66**

    1. Deployment of Additional Election Systems cyber-monitoring capabilities................…....1 of 441

    2. Memorandum of Agreement for Cybersecurity Services….....…...........................4 of 441

    3. Federalization of Texas Elections………...…...............................................…..58 of 441

    4. Report of Review of ES&S EVS 6.0.2.0…………….....….................................85 of 441

    5. Election System & Software (ES&S) Voting Systems Problems……….................…….90 of 441

    6. Accreditation and Certifications…………………………..............…..........….109 of 441

7. Foreign Companies in Texas Infrastructure: Scytl and Election Night Reporting (ENR)...128 of 441

8. Declaration of Terpsehore P Maras……………………………………………………145 of 441

9. Declaration of Shawn Smith……………………………………………………………183 0f 441

10. Declaration of John R. Mills……………………………………………………………253 of 441

11. Declaration of Douglas Logan………………………………………………………...293 of 441

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Dallas Area Rapid Transit*, 410 S.W.3d 876, 880 (Tex. App.—Austin 2013, no pet.) ......................28

*Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015)....................38

*Arneson v. Bd. of Trustees of Employees' Retirement System of Ga.*, 257 Ga. 579, 579-580 (1)-(3) (361 SE2d 805) (1987)..........................................................................................................................................34

*Assoc. Indus. of New York v. Ickes,* 134 F.2d 694, 704 (2d Cir. 1943)............................................................43

*Azul Pacifico, Inc. v. City of Los Angeles*, 948 F.2d 575, 586 (9th Cir. 1991) ...............................................15

*Baker v. Carr* 369 US 186, 208 (1962)...........................................................................................................33

*Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992)...........................................................................................34

*Bush v. Gore*, 531 U.S. at 104–05, 121 S.Ct. 525(2000) .........................................................................11, 26

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n. 1 (6th Cir.2005) ...................17

*Cooper v. Aaron*, 358 U.S. 1, 78 S. Ct. 1401 (1958) .......................................................................................49

*Cuellar v. Maldonado*, No. 13-14-00491-CV, at *7 (Tex. App. Mar. 5, 2015). ...............................................34

*Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1404 (N.D. Ga. 2019) ........................................................11

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,274 F.3d 377, 400 (6th Cir.2001)....38

*DeVries v. Secretary of State,* 329 Mich.  68 (1950).  44 N.W.2d 872. ............................................................49

*Dickinson*, 331 U.S. at 748, 67 S.Ct. (1947)...................................................................................................15

*Dobbs v. Jackson Women's Health Organization*, No. 19-1392 (June 24, 2022)...............................................15

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)........................................................................................................44

*Ex parte Young*, 209 U.S. 123 (1908) ..............................................................................................................13

*Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973) .................................................................................40

*Gomillion v. Lightfoot*, 364 U.S. 339, 347-48 (1960).......................................................................................44

*Grimes v. Navigant Consulting, Inc.*, 185 F.Supp.2d 906, 913 (N.D.Ill.2002) .................................................17

*Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 472 (Tex. 2012).....................................................44

*Hernandez*, 872 F.3d (2017) ...........................................................................................................................44

*In re State*, No. 20-0394, at *10 n.33 (Tex. May 27, 2020) ..............................................................................34

*Industrial Found.*, 540 S.W. 2d at 682..............................................................................................................28

*Jacobs*, 290 U.S. at 16, 54 S.Ct. (1933)..........................................................................................................14

*Karen Wiseman v. Tarrant County, Texas and Heider Garcia* (2021) No. 096-330696-21, Texas ....................48

*Kusper v. Pontikes*, 414 U.S. 51, 55 (1973)............................................................................................34

*Lackey v. State*, 638 S.W.2d 439, 467 (Tex. Crim. App. 1982)................................................................44

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)......................................................................44

*Michael Higgin and Michael Mennella v. The Honorable Anthony J. Albence, et.al.* No. 2022-0641-NAC and *Ayonne "Nick" Miles, Paul J. Falkowski, and Nancy M. Smith v. Delaware Department of Election, et.al.* No. 2022-0644-NAC. Sept. 14, 2022. (Memorandum Opinion) ....................................................12

*Obama for Am. v. Husted*,697 F.3d 423, 436 (6th Cir.2012) ...................................................................38

*O'Toole v. Northrop Grumman Co*rp., 499 F.3d 1218, 1225 (10th Cir. 2007) .......................................17

*Paxton v. City of Dallas,* No. 03-13-00546-CV, 2015 WAL3394061 at *3 (Tex. App. May 22, 2015)..............28

*Reynolds v. Sims*, 377 U.S. 533, 558 (1964) ..........................................................................................10

*Rice v. Cayetano*, 528 U.S. 495 (2000)..................................................................................................41

*Rothschild v. Columbus Consol. Govt.*, 285 Ga. 477, 479-480 (678 SE2d 76) (2009) ...........................34

*San Diego Gas Electric Co. v. City of San Diego*,450 U.S. 621, 654-55, 101 S.Ct. 1287, 1305-06, 67 L.Ed.2d 551 (1981) ......................................................................................................................................15

*Schaffer v. Clinton*, 240 F.3d 878, 885 n. 8 (10th Cir.2001) ..................................................................17

*Shelby County v. Holder*, 570 U.S. 529, 566 (2013)...............................................................................34

*Sherar v. Cullen*, 481 F 946 (1973) .......................................................................................................49

*Snyder v. Phelps*, 580 F.3d 206, 214 n.4 (4th Cir. 2009) .......................................................................39

*Sons of Confederate Veterans, et.al. v. Henry County Board of Commissioners*, No. S22G0039. AND *Sons of Confederate Veterans, et.al. v. Newton County Board of Commissioners*, No. S22G0045. GA Sup. Court October 25, 2022. .............................................................................................................................35

*State v. Johnson*, 821 S.W.2d 609 (Tex. Crim. App. 1991)....................................................................15

*State v. Terrazas*, 962 S.W.2d 38, 40 n.2 (Tex. Crim. App. 1998) .........................................................15

*Stromberg v. California*, 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)...............................39

*Stuart v. Camnitz* , 774 F.3d 238, 244 (4th Cir. 2014). *Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019)............39

*Tex. Comptroller of Pub. Accounts v. Att'y Gen. of Tex.,* 354 S.W.3d 336, 346-48 (Tex. 2010) ........................28

*Texas Alliance for Retired Americans; Sylvia Bruni; DSCC; DCCC v. Scott Secretary of State* 20-40643 March 16, 2022. United States Court of Appeals, Fifth Circuit. .................................................................49

*Thomas v. Groebl*, 147 Tex. 70, 212 S.W.2d 625, 630 (1948) ...............................................................34

*Thompson v. Willis*, 881 S.W.2d 221, 225 (Tex. App. 1994) .................................................................34

*United States v. Reading Co.*, 226 U.S. 324, 357 ................................................................................44

*Veasey v. Perry*, No. 13-CV-00193, 2014 WL 5090258, at *41 (S.D.Tex. Oct. 9, 2014) ....................34

*Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652, 656 (1914)..................15

*Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ........................................................................................10

*Western Union Telegraph Co. v. Foster*, 247 U.S. 105, 114. ...............................................................44

*Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) ...................................................................................34

## Statutes

18 U.S.C. § 245 .....................................................................................................................................15, 39

28 U.S.C. § 1331 ...................................................................................................13, 38

28 U.S.C. § 1343 ...........................................................................................................13

28 U.S.C. § 1343 ...........................................................................................................47

28 U.S.C. § 1343(a)(3) ..................................................................................................13

28 U.S.C. § 1343(a)(4) ..................................................................................................14

28 U.S.C. § 1367 ...................................................................................................35, 50

28 U.S.C. § 1391(b) .......................................................................................................14

28 U.S.C. § 1943 ...........................................................................................................44

28 U.S.C. § 2201 ...................................................................................................13, 14

28 U.S.C. § 2202 ...................................................................................................13, 47

42 U.S.C. § 1983 ...................................................................................................13, 38

42 U.S.C. § 1985 ...................................................................................................13, 35

42 U.S.C. § 1986 ...................................................................................................13, 35

42 U.S.C. §15371(b) ......................................................................................................31

5 U.S.C. § 552 ......................................................................................................13, 39

52 U.S.C. §10101 ...........................................................................................................44

52 U.S.C. § 10101(a)(2)(B) ...........................................................................................44

52 U.S.C. § 10307(a) .....................................................................................................15

52 U.S.C. § 20507(a)(6) .................................................................................................28

52 U.S.C. § 20510 ..........................................................................................................44

52 U.S.C. § 20701 ..........................................................................................................32

52 U.S.C. § 20971 ..........................................................................................................31

For the People Act of 2021 ............................................................................................16

HAVA ............................................................................................................................30

Judiciary Act of 1789 ....................................................................................................13

Privacy Act of 1974 ......................................................................................................16

TEX. CIV. PRAC. & REM. CODE § 65.011 .................................................................38

TEX. ELEC. CODE § 1.0015 ...............................................................................30, 31, 37

TEX. ELEC. CODE § 1.003(a-1) ...........................................................................30, 36

TEX. ELEC. CODE § 1.013 ...........................................................................................32

TEX. ELEC. CODE § 11.002(a)(6) ................................................................................26

TEX. ELEC. CODE § 13.004 .........................................................................................46

TEX. ELEC. CODE § 18.066(d) .....................................................................................27

TEX. ELEC. CODE § 18.066 .........................................................................................27

TEX. ELEC. CODE § 66.02 ...........................................................................................48

TEX. ELEC. CODE § 66.058 .........................................................................................48

TEX. ELEC. CODE § 122.001 ...............................................................................15, 31, 36

TEX. ELEC. CODE § 122.001(a)(3) ..............................................................................31

TEX. ELEC. CODE § 122.001(a)(4) ..............................................................................31

TEX. ELEC. CODE § 122.031 .......................................................................................45

TEX. ELEC. CODE § 122.032 ...................................................................................................31
TEX. ELEC. CODE § 123.001 ...................................................................................................31
TEX. ELEC. CODE § 123.002 .........................................................................................12, 31, 41
TEX. ELEC. CODE § 273 ..........................................................................................................40
TEX. ELEC. CODE § 273.081 .............................................................................................37, 38
TEX. ELEC. CODE § 276.013 .............................................................................................32, 44
TEX. ELEC. CODE § 276.013(a)(4) ..........................................................................................42
TEX. ELEC. CODE § 276.013(2) ...............................................................................................37
TEX. ELEC. CODE § 276.013(6) ...............................................................................................37
TEX. ELEC. CODE § 276.013(b)(1) ...........................................................................................37
TEX. ELEC. CODE § 122.032 ...................................................................................................31
TEX. ELEC. CODE  § 276.013(1) ..............................................................................................37
TEX. ELEC. CODE Chap. 2274 .................................................................................................23
TEX. ELEC. CODE Chp. 64 ......................................................................................................12
TEX. ELEC. CODE Chp. 65 ......................................................................................................12
Texas Election Code, Title 8 ..............................................................................................12, 31
TEX. GOV. CODE § 23.302 ...............................................................................................38, 50
TEX. GOV. CODE § 23.301 ......................................................................................................50
TEX. LOC. GOV. CODE § 81.022 .............................................................................................12
TEX. PEN. CODE § 37.03 .........................................................................................................15
TEX. PEN. CODE § 37.09 .........................................................................................................15
TEX. PEN. CODE § 37.10 ....................................................................................................15, 33
TEX. PEN.  CODE § 37.11 ........................................................................................................16
TEX. PEN. CODE §39.03(2) ......................................................................................................43
USA Patriot Act of 2001 (42 U.S.C. 519c(e)) ...........................................................................17

## Other Authorities

Akamai and China Unicom Establish Strategic Cloud Services Partnership. https://www.prnewswire.com/
    news-releases/akamai-and-china-unicom-establish-strategic-cloud-services-partnership-300088898.html23
Akamai Enterprise Threat Protector. https://www.cisecurity.org/services/cis-cybermarket/software/akamai-
    enterprise-threat-protector ............................................................................................................23
CIS Partners with Crowdstrike. https://www.zdnet.com/article/cis-partners-with-crowdstrike-on-
    cybersecurity-platform-protecting-local-governments/ ...................................................................24
Comments from Scytl on the CORE report from the electronic voting solution used in 2010 Victorian Election,
    Version 1. https://www.parliament.vic.gov.au/images/stories/committees/emc/2010_Election/
    submissions/14_Scytl_EMC_Inquiry_No.6.pdf ............................................................................24
Dallas County Adoption of Election Voting Tabulation Systems and Services. https://files.ttttexas.com/case/
    dallas-county ...............................................................................................................................21
Election Security Resources Guide. https://www.cisa.gov/sites/default/files/publications/
    19_0531_cisa_election-security-resources-guide-may-2019.pdf....................................................17

Elections Infrastructure ISAC Year in Review 2018. https://www.cisecurity.org/wp-content/uploads/2019/02/EI-ISAC-2018-YIR.pdf.................................................................................................................17

ESI Strategic Plan. https://www.cisa.gov/sites/default/files/publications/ESI%20Strategic%20Plan_FINAL%202.7.20%20508.pdf.................................................................24

https://files.ttttexas.com/case/dallas-county Documents 4: Pricing Summary and Payment Terms.................21

https://files.ttttexas.com/case/dallas-county Document 5: ES&S TERMS AND CONDITIONS...........................21

Joseph Story, Commentaries on the Constitution of the United States § 826 (1833).........................................25

MASTER SAAS AGREEMENT Between DALLAS COUNTY, TEXAS on behalf of the DALLAS COUNTY ELECTIONS DEPARTMENT & SOE SOFTWARE CORPORATION (d/b/a SCYTL}. https://files.ttttexas.com/case/dallas-county Document 6...............................................................................................................................22

Mechler Report. https://www.sos.texas.gov/elections/forms/sysexam/brian-mechler-ESS-exam-report-EVS6110-aug.pdf#search=evs%206.1.1.0.............................................................................................20

Request for Proposal for Election Voting Tabulation Systems and Services - Contract Execution. https://files.ttttexas.com/case/dallas-county.......................................................................................................21

Request for Proposal. https://files.ttttexas.com/case/dallas-county.....................................................................20

SOE SOFTWARE, A SCYTL COMPANY. https://www.eac.gov/voting-equipment/registered-manufacturers/soe-software-scytl-company...............................................................................................................................22

State of Texas, Department of Information Resources. Contract for Services: Amazon Web Services, Inc. https://acrobat.adobe.com/link/review?uri=urn:aaid:scds:US:70191bd6-f30f-3bbd-92d9-ca55c3115659#pageNum=1......................................................................................................................22

*Tex. Att'y Gen. Op.* OR2017-06026 (2017)..........................................................................................................28

Texas Election Security Update. https://www.sos.texas.gov/elections/conducting/security-update.shtml......25

*The Federalist No.* 59..............................................................................................................................................25

U.S. H.R. 1...............................................................................................................................................................25

Voting System Test Laboratory Program Manual, 2.0. https://www.federalregister.gov/documents/2015/04/14/2015-08567/voting-system-test-laboratory-program-manual-20-for-the-us-election-assistance-commissions-voting...........................................................................................................................................21

## Rules

Accardi Doctrine...........................................................................................................................................50
Doctrine of Stare Decisis.............................................................................................................................15
Fed. R. Civ. P. Rule 15..............................................................................................................................1, 14
Fed. R. Civ. P. Rule 201(d).............................................................................................................................17
Fed. R. Civ. P. Rule 57...................................................................................................................................13
Fed. R. Civ. P. Rule 65...................................................................................................................................13
Fed. Rule Evidence Rule 501........................................................................................................................50

## Regulations

TEX. ADMIN. CODE § 81.61 ...........................................................................................................................31
TEX. ADMIN. CODE § 81.60 ...........................................................................................................................31

# Constitutional Provisions

Declaration of Independence ....................................................................................................10
Due Process Clause.................................................................................................................14
Elections Clause......................................................................................................................11
Equal Protection Clause.....................................................................................................11, 14
Free Speech Clause.................................................................................................................39
Guarantee Clause...............................................................................................................16, 35
Right to Privacy Clause......................................................................................................24, 46
Right to Vote Clause...........................................................................................................10, 15
TEX. CONST. art. I § 2...........................................................................................................16
TEX. CONST. art. I § 13.........................................................................................................42
TEX. CONST. art. I § 19.....................................................................................................16, 42
TEX. CONST. art. I § 29.........................................................................................................16
TEX. CONST. art. VI § 2.................................................................................................12, 15, 31
TEX. CONST. art. VI § 4...........................................................................................12, 31, 35, 36
TEX. CONST. art. XVI § 1......................................................................................................41
U.S. CONST. art. 1 § 4 cl. 1...........................................................11, 13, 16, 24, 26, 30, 46
U.S. CONST. amend. 1............................................................................................................13
U.S. CONST. amend. 4............................................................................................................11
U.S. CONST. amend. 5............................................................................................................13
U.S. CONST. amend. 10..........................................................................................................16
U.S. CONST. amend. 11..........................................................................................................49
U.S. CONST. amend. 13..........................................................................................................41
U.S. CONST. amend 13 § 1.....................................................................................................16
U.S. CONST. amend. 14......................................................................................................13, 49
U.S. CONST. amend. 15......................................................................................................10, 15
U.S. CONST. amend. 17..........................................................................................................10
U.S. CONST. amend. 19..........................................................................................................10
U.S. CONST. art. IV § 4..........................................................................................................16
U.S. CONST. art. VI..........................................................................................................16, 41

## I. INTRODUCTION

1.     This action is an action to bring transparency, fairness, honesty, and exemplary quality to Texas elections and to hold responsible those government officials who violate the rights of Petitioners (and all Texas citizens) guaranteed by the U.S. and Texas Constitutions. Petitioners (and all Texas citizens) have a fundamental legal right to the clearly established principles of election equality, integrity, accurateness, honesty, and justice.

2.     United States and Texas law recognizes the clearly established principle of one-citizen, one-vote.   This is the bedrock of Texas law and the most cherished and valuable right of any Texas citizen, including Petitioner, guaranteed by the Texas Constitution. "The conception of political equality from the Declaration of Independence to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing - one person, one vote." *Reynolds v. Sims*, 377 U.S. 533, 558 (1964).

3.     "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined.  Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  Texas law adopts these fundamental principles. This case seeks to enforce these clearly established fundamental principles of Texas law.

4.     Since at least the 2020 general election, Dallas County approved, adopted, and purchase computerized election equipment that was not properly certified as required by

Texas legislative statutes, which then violates constitutional provisions for elections and voting. Substandard equipment is vulnerable and the true results of an election that relies upon unlawful equipment can never be known with full confidence.

5.    Furthermore, Respondents have consulted, voted, and approved a memorandum of understanding/agreement with the Department of Homeland Security (DHS) through the Center of Information Security (CIS) violative of U.S. CONST. art. I § 4, cl. 1, states' rights for elections (Elections Clause): releasing Petitioners' private information in violation of the Fourth Amendment.

6.    "In any state-adopted electoral scheme, '[t]he right to vote is protected in more than the initial allocation of the franchise.  Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.'" (*Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1404 (N.D. Ga. 2019) (quoting *Bush v. Gore*, 531 U.S. at 104–05, 121 S.Ct. 525(2000)).    Thus, it is the paramount duty of all government, with respect to election justice, to ensure that one-citizen, one-vote is clearly and proactively protected. This foundational principle of Texas law and its constitutional republic is at issue.

7.    Petitioners do not consent to outsourcing our elections to third-party vendors through the use of Electronic Voting Systems (EVS), or to DHS and affiliated federal agencies (CISA, NSA, FBI, FEMA) meddling in Texas election infrastructure.  This overreach of power provides access to private information, including voting records. The ex-

pectation of privacy held by voters, is that private personal information will provide voters the right to vote within their local counties.

8.    Petitioners base their standing on an issue of fundamental public importance: voting, and the right to have their individual vote counted. They allege that the uncertified, substandard systems and devices undermines the Elections by allowing unconstitutional votes to be counted:

9.    "Those illegal votes may be decisive, Plaintiffs' urge, because it is not uncommon for state elections to be decided by a hair…An election implicating votes cast in contravention of the Delaware Constitution may have significant real-life consequences. Plaintiffs' concerns raise more than voting dilution. They strike at the voting right itself. Plaintiffs, like all voters, have a right to participate in free and fair elections under which all votes legally made— and only votes legally made—count. Regardless of how laudable the purpose behind the Vote-by-Mail Statute may be, the statute cannot introduce into the General Election votes prohibited under the Delaware Constitution. Plaintiffs adequately allege that it could. Accordingly, they have stated an injury in fact. *Michael Higgin and Michael Mennella v. The Honorable Anthony J. Albence, et.al*. No. 2022-0641-NAC and *Ayonne "Nick" Miles, Paul J. Falkowski, and Nancy M. Smith v. Delaware Department of Election, et.al*. No. 2022-0644-NAC. Sept. 14, 2022. (Memorandum Opinion).

10.    Since the systems are uncertified and noncompliant, the election systems are compromised and/or performing substandard. Respondents neglected the safeguards (TEX. ELEC. CODE § 123.002, LOC. GOV. CODE § 81.022) to protect voters as required by legislative statutes, and the systems do not operate according to legislative conditions. (Texas Election Code, Title 8). The presence of substandard, uncertified equipment and devices separates voters into two groups: those who have had their votes ille-

gally counted and those who have not. This represents unequal protection under the Texas Constitution Article 1 section 3, Article VI section 2(c), and Fifteenth Amendment.

11.    Petitioners seek a Declaratory Order with a permanent injunction that the Respondents adhere to the constitutionally protected process of collecting and counting votes that ensures integrity and transparency.  This is to require preservation of records, the removal of federal interference in Texas elections, sequentially-marked paper ballots, hand-counted by residents of the state of Texas, and following all Texas state election laws. (TEX. CONST. art. VI § 2 and 4, TEX. ELEC. CODE Chp. 64 and 65).

12.    Additionally, Petitioner(s) seek redress for the abuse and devastation of our Constitutional rights and protections by our elected officials. The true results of an election that relies upon uncertified, non-complaint equipment can never be known with full confidence, and Petitioners' constitutional rights to vote will be denied if computerized equipment is used.

## II.    JURISDICTION AND VENUE

13.                    Petitioners bring this cause of action under the U.S. Constitution Article I § 4, Clause 1; First, Fourth, Fifth, Fourteenth, and Fifteenth Amendments of the U.S. Constitution; original federal jurisdiction 42:1983cv Civil Rights Act - Civil Action for Deprivation of Rights, 42:1983vp Violation of Due Process and Equal Protection,

42:1985 Conspiracy to interfere with civil rights, 42:1986 Neglect of Duty, 42:1983dp Civil Right Denial of Due Process, 28:1331dp Violation of Due Process (federal question), ight to Privacy, 28:2201 Creation of Remedy, 28:1331vc Violation Constitutional Rights (federal question), and cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908) to challenge government officers during an "ongoing violation of federal law and [to] seek prospective relief" under the equity jurisdiction conferred on federal district courts by the Judiciary Act of 1789.

14.        This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 because this action seeks to protect civil rights under the First, Fourth, Fifth, Fourteenth, and Fifteenth Amendments to the United States Constitution.

15.         This Court has authority to grant declaratory relief based on 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

16.         This Court has jurisdiction to grant injunctive relief based on 28 U.S.C. § 1343(a)(3) authority to do so under Federal Rule of Civil Procedure Rule 65.

17.         This Court has jurisdiction to award nominal and compensatory damages under 28 U.S.C. § 1343(a)(4).

18.         This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 in a case of actual controversy in which any court of the United States, upon the filing of appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

19.         Petitioners, Anne Stone and Barry Wernick, shall be added to the cause under Fed. R. Civ. P. Rule 15.

20.    There exists an actual and justiciable controversy between Petitioners and Respondents requiring resolution by this Court.

21.    Petitioners have no adequate remedy at law.

22.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events or omissions giving rise to Petitioners' claims occurred in this District and in which the Respondents are subject to the court's person jurisdiction with respect to such action.

23.    This Court has personal jurisdiction over all Respondents because Respondents reside and are domiciled in the Dallas Division for the Northern District of Texas.

## III.    NATURE OF THIS ACTION

24.    This is an action in law and equity under the United States Constitution for violation of Petitioners' Equal Protection and Due Process rights by Respondents.

Petitioners seek only equitable, injunctive, and declaratory relief against Respondents for violation of Petitioners' clearly established Equal Protection and Due Process rights guaranteed to them by and through the United States Constitution. Petitioners do not seek damages.

25.    The Constitution itself provides both the cause of action and the remedy. *Jacobs*, 290 U.S. at 16, 54 S.Ct. at 27; *San Diego Gas Electric Co. v. City of San Diego,*450 U.S. 621, 654-55, 101 S.Ct. 1287, 1305-06, 67 L.Ed.2d 551 (1981) (Brennan, J., dissenting); see also *Dickinson*, 331 U.S. at 748, 67 S.Ct. at 1384. *Azul Pacifico, Inc. v. City of Los Angeles*, 948 F.2d 575, 586 (9th Cir. 1991).

26.    It would make no sense to provide for a constitutional right; require judges to preserve, protect, and defend that constitutional right; but prohibit judges from enforcing that constitutional right and from remedying a violation of that constitutional right. See also *Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652, 656 (1914) (if a remedy for the violation of a constitutional right is not provided, that right might as well be stricken from the Constitution). See *Dobbs v. Jackson Women's Health Organization*, No. 19-1392 (June 24, 2022) Justice Alito's opinion on the Doctrine of Stare Decisis. Constitutional rights are not simply grandiose, advisory principles. They are the foundation upon which our system of the orderly administration of justice is

structured. (citing *State v. Johnson*, 821 S.W.2d 609 (Tex. Crim. App. 1991)), *State v. Terrazas*, 962 S.W.2d 38, 40 n.2 (Tex. Crim. App. 1998).

## IV.    ISSUES PRESENTED

27.    The specific issues brought before this court, which represent a constitutional crisis are:

a.    The electronic voting systems are not lawfully certified in compliance with voting system standards TEX. ELEC. CODE § 122.001. This impedes the Petitioners' lawful votes in elections. TEX. CONST. art VI § 2, U.S. CONST. amend. 15.

b.    The electronic voting systems and their various devices are not lawfully certified, which causes the Petitioners to cast illegal ballots. 52 U.S.C. § 10307(a), Due Process Clause.

c.    Since Texas officials presented uncertified voting systems as certified, they abridged the Petitioners' federally protected right to vote, negated Petitioners' intellectual property, and affronted TEX. PEN. CODE § 37.03, § 37.09, § 37.10, 18 U.S.C. § 245. Fifth Amendment.

d.    The expressed intent and effectiveness of the Petitioners' voice was negated as the uncertified electronic voting systems and their various devices are vulnerable to hacking, tampering, and algorithmic preprogramming. TEX. CONST. art. VI § 2, Right to Vote Clause, First Amendment.

e.    The uncertified, substandard electronic voting systems (EVS) are unreliable mechanisms for accurately collecting, retaining, and communicating the expression of the Petitioners' vote. It is not acceptable to injure the Petitioners' voice, intellectual property, and will under the Constitutional premise of the consent of the governed. Declaration of Independence, Guarantee Clause, U.S. CONST. art. VI.

g.    Since the acting representative servants were unlawfully elected as a result of uncertified, substandard, unlawful vote collection devices they are not acting in their official capacity as they institute unconstitutional systems and mandates. TEX. CONST. art. I § 19 and § 29.

h.    They would, then, be impersonating public servants. TEX. PEN. CODE § 37.11.

j.    What is the Constitutional remedy for the usurpation of the Petitioners' role as the underlying governmental authority, and for forcing the Petitioners to participate in their own servitude through fraudulent policies, systems, and measures? TEX. CONST. art. I § 2 and 29, U.S. CONST. amend 13 § 1 and U.S. CONST. amend. 10.

k.    What is the Constitutional remedy for the usurpation of the Texas Legislature, as the Constitutional regulator for elections, and forcing Petitioners to participate in a "federalized" election? U.S. CONST. art. 1 § 4 cl. 1.

l.   The Department of Homeland Security has installed "monitoring" sensors on state and local voting systems/rolls. This is an invasion of Petitioners' private and personal information. Privacy Act of 1974, Fourth Amendment.

m.   Art. 1 Sec. 4 cl. 1 of the United States Constitution grants sole authority of elections to the Texas Legislature, Respondents do not have the authority to "federalize" Texas elections by contract with the Department of Homeland Security via Center for Internet Security and third-party partners as the U.S. Congress rejected H.R. 1 (For the People Act of 2021)?

n.   Elections in Texas shall not be rented out to third-party vendors, unelected "officials", foreign entities, and other actors seeking to usurp the premise of our Constitutional Republic. U.S. CONST. art. IV § 4.

## V.    FACTUAL ALLEGATIONS

**A.    JUDICIAL NOTICE**

28.    Due to the dispositive nature of the facts presented in this case, judicial economy warrants the Court to take judicial notice of the public record contained in the petition and subsequent filings regarding electronic voting equipment and systems certifications published by the Texas Secretary of State, the Elections Assistance Commission, Department of Homeland Security, Center for Information Security, and communications from all Respondents' official email addresses.   "It is not uncommon for courts to take judicial notice of factual information found on the world wide web. See *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n. 1 (6th Cir.2005) (taking judicial notice of a term defined on the website of the National Association of Securities Dealers, Inc.); *Schaffer v. Clinton*, 240 F.3d 878, 885 n. 8 (10th Cir.2001) (taking judicial notice of information found in a political reference almanac and citing to the almanac's website). *Cf. Grimes v. Navigant Consulting, Inc.*, 185 F.Supp.2d 906, 913 (N.D.Ill.2002) (taking judicial notice of published stock prices found on the world wide web). Under the circumstances of this case, we conclude the district court abused its discretion by failing

to take judicial notice of the actual earnings history provided by Northrop Grumman on the internet as required by Rule 201(d). (*O'Toole v. Northrop Grumman Co*rp., 499 F.3d 1218, 1225 (10th Cir. 2007)).”

## B.    DALLAS COUNTY

29.    In January 2017, Department of Homeland Security (DHS) designated election systems as critical infrastructure.[1] [2]

30.    In 2017, the Election Infrastructure Subsector Government Coordinating Council (EIS-GCC) was established and consisted of representatives from Department of Homeland Security (DHS), the U.S. Election Assistance Commission (EAC), the National Association of Secretaries of State (NASS), and the National Association of State Election Directors (NASED).  Texas participated in the pilot program which began in March of 2018. [3]

31.    In October 2018, the newly formed EIS-GCC determined that an Information Sharing and Analysis Center (ISAC), focusing on election infrastructure, was needed and recommended its creation.[4]

32.    Then, DHS implemented a pilot program to develop a framework for the new ISAC The EIS-GCC turned to Center for Internet Security (CIS) and MS-ISAC® (the

---

[1] USA Patriot Act of 2001 (42 U.S.C. 519c(e))

[2] Election Security Resources Guide. https://www.cisa.gov/sites/default/files/publications/19_0531_cisa_election-security-resources-guide-may-2019.pdf pg. 2

[3] Elections Infrastructure ISAC Year in Review 2018. https://www.cisecurity.org/wp-content/uploads/2019/02/EI-ISAC-2018-YIR.pdf

[4] Id. pg. 2

Multi-State Information Sharing & Analysis Center®) to support these efforts, as the MS-ISAC was designated by DHS as their key cybersecurity resource for all U.S. State, Local, Tribal, and Territorial (SLTT) governments.

33.     In 2018, EIS-GCC held a vote on February 15 to formally launch the ISAC (Information Sharing and Analysis Center) Elections Infrastructure ISAC which began on March 7, 2018.[5]

34.     On October 19, 2018, Dallas County contracted with Center for Internet Security, Inc. (CIS) in preparation for the upcoming Fall 2018 General Elections, this brief is for additional Cybersecurity Services (CSS) for Dallas County Elections through a Memorandum of Agreement (MOA) with the and Dallas County. CIS has entered into an agreement with the US Department of Homeland Security (DHS) to provide Cybersecurity Services, including Cybersecurity Services for state election entities. (See *Appendix 1* Deployment of Additional Election Systems cyber-monitoring capabilities).

35.     Dallas County's involvement in this Pilot program called for the deployment of "Albert," the MS-ISAC's Intrusion Detection System (IDS), on every pilot state's elections network to the voter registration database if it was not covered by an existing Albert sensor. DHS acquired the funding and approval, deciphering whether each state was covered, working with the states to execute agreements, identifying and educating stakeholders from various departments and vendors, ordering and configuring the hardware along

---

[5] Id. pg. 3

with assisting the pilot members with installation.[6] (See *Appendix 2* Dallas County's Memorandum of Understanding).

36.    The expansive reach of the DHS, federal and private partners continued under the guise of "security" and enters the public sector through social media regarding "disinformation" of security of elections.

37.    Through CIS and EI-ISAC, DHS has infiltrated all aspects of Dallas County's election processes. (See *Appendix 3* Federalization of Texas Elections).

**38.**    Dallas County is one of many of the jurisdictions in Texas that entered into a "Memorandum of Agreement for Cybersecurity Services" (*Appendix 2*) with CIC operating in the capacity of the EI-ISAC.  Dallas County Judge, Clay Jenkins signed on October 19, 2018, and on June 16, 2020 contracted for cellphone connectivity for modems and scanners (*Exhibit A of Appendix 2*).

**39.**    In this "Memorandum" between Dallas County, Texas, we learn that the EI-ISAC is contracted by the Department of Homeland Security to provide "Cybersecurity Services" for the state election entities.

**40.**    The "cybersecurity services" and any "associated service devices" are at **no cost** to the entity.  This DHS and EI-ISAC among other three letter agencies entering into an agreement to federalize elections at a county level by incentivizing compliance in exchange for "free" services, which is "contingent on the availability and allocation of federal funds for this purpose".

---

[6] Id. pg. 3

**41.**     The county also acknowledges that it may receive from CIS trade secrets and con-

fidential and proprietary information "Confidential Information however both parties

agree to "hold each other's Confidential Information" in confidence. Except the inclusion

of CIS shall be permitted to disclose "relevant aspects" of such **Confidential Informa-**

**tion** to its officers, employees, agents and CIS's cybersecurity partners, including federal

partners.  Federal partners such as DHS, FEMA, CISA, FBI…

**42.**     Along with unfiltered access to the county's ("entity") data of constituents, the

county shall also provide at the county's expense, logistic support in the form of rack

space, electricity, Internet connectivity, and any other infrastructure necessary to support

communications at the county's expense. 52 U.S.C. § 20507(a)(6)

**43.**     On November 5, 2018 ES&S submitted their RFP to the Dallas County.[7]

**44.**     On January 22, 2019 ES&S presented 6.0.2.0 to Secretary of State for examina-

tion and certification. (See *Appendix 4* Report of Review of ES&S EVS 6.0.2.0).

**45.**     On March 28, 2019 Jose Esparza certified EVS 6.0.2.0 for use in elections in

Texas.[8]

**46.**     On April 23, 2019 the Secretary of State sent a letter to Dallas County saying that

6.0.2.0 was certified for use in Texas.[9]

---

[7] Mechler Report. https://www.sos.texas.gov/elections/forms/sysexam/brian-mechler-ESS-exam-report-EVS6110-aug.pdf#search=evs%206.1.1.0 (Sec. 8 Conclusions) Last visited 06/07/22

[8] Request for Proposal. https://files.ttttexas.com/case/dallas-county Document 1

[9] Dallas County Adoption of Election Voting Tabulation Systems and Services. https://files.ttttexas.com/case/dallas-county Document 2

**47.**     On May 7, 2019, Dallas County approved the contracted with ES&S under RFP No. 2018-052-6745 in County Commissioners Court.[10] TEX. ELEC. CODE § 123.001.

**48.**     On September 3, 2019 the Secretary of State sent letter to Dallas County indicating that the application for county-wide precinct voting was permitted.[11]

**49.**     Dallas County contracted with ES&S for a regional transmission hardware and software for election night results. This was approved with the RFP No. 2018-052-6745 on May 7, 2019.[12] (See *Appendix 5* for Election System & Software (ES&S) Voting Systems Problems).

**50.**     The Voting System Test Laboratory, SLI Compliance, that approved the certification is not an accredited laboratory in accordance with the Voting System Test Laboratory Program Manual ver. 2.0 effective May 31, 2015, page 38, Sec 3.6.1.[13] (See *Appendix 6* for Accreditation and Certifications).

---

[10] Request for Proposal for Election Voting Tabulation Systems and Services - Contract Execution. https://files.ttttexas.com/case/dallas-county Document 3

[11] Dallas County Adoption of Election Voting Tabulation Systems and Services. https://files.ttttexas.com/case/dallas-county Document 2

[12] https://files.ttttexas.com/case/dallas-county Documents 4: Pricing Summary and Payment Terms and 5: ES&S TERMS AND CONDITIONS

[13] Voting System Test Laboratory Program Manual, 2.0. https://www.federalregister.gov/documents/2015/04/14/2015-08567/voting-system-test-laboratory-program-manual-20-for-the-us-election-assistance-commissions-voting Last Visited 08/02/22

**51.**     Dallas County has contracted SOE Software Corporation (d/b/a Scytl) for Election Night Reporting (ENR).[14] (See *Appendix 7* for Foreign Companies in Texas Infrastructure: Scytl and Election Night Reporting (ENR)).

**52.**     In 2018, Scytl became a partner of Amazon Web Services which hosts their services on Amazon's cloud platform. This contract is implemented in a Software as a Service model using Amazon Web Services (AWS). Our election system infrastructure is currently housed under the same web services as the vendor who reports our election results. The EAC has posted that SOE Software, A Scytl Company is an inactive voting system registered manufacturer but does not provide dates of when active or inactive.[15]

53.     The state of Texas via Department of Information Resources (DIR) has contracted with Amazon Web Services, Inc.[16]

54.     When Scytl was asked about the subject of potential risks, a spokeswoman answered flippantly "(Voters) don't have the ability to review the source code of their (online) banking either." The company claims that a public examination of the documentation would jeopardize its business model.[17]

_____

[14] MASTER SAAS AGREEMENT Between DALLAS COUNTY, TEXAS on behalf of the DALLAS COUNTY ELECTIONS DEPARTMENT & SOE SOFTWARE CORPORATION (d/b/a SCYTL}. https://files.ttttexas.com/case/dallas-county Document 6.

[15] SOE SOFTWARE, A SCYTL COMPANY. https://www.eac.gov/voting-equipment/registered-manufacturers/soe-software-scytl-company Last visited 08/01/22

[16] State of Texas, Department of Information Resources. Contract for Services: Amazon Web Services, Inc. https://acrobat.adobe.com/link/review?uri=urn:aaid:scds:US:70191bd6-f30f-3bbd-92d9-ca55c3115659#pageNum=1 Last visited 08/01/22

[17] Comments from Scytl on the CORE report from the electronic voting solution used in 2010 Victorian Election, Version 1. https://www.parliament.vic.gov.au/images/stories/committees/emc/2010_Election/submissions/14_Scytl_EMC_Inquiry_No.6.pdf Last visited 08/01/22

55.     Two companies in particular that produce COTS are Huawei and Akamai, the latter of which is partnered with SCYTL and linked to Dominion Software. In the Election Whistleblower Affidavit Ms. Terpsehore Maras attests that the tallied votes on behalf of Dominion and, under contract with the Associated Press (AP), provide the results for reporting. (see *Appendix 8*) A very similar contractual relationship appears between Dallas county as noted above via SOE d/b/a Scytl. Maras Affidavit corroborates to the vulnerabilities from COTS which are still culpable to domestic, as well as foreign hacking.

56.     In 2015, Akamai Technologies, Inc. announced a strategic partnership agreement with China Telecom Corporation Limited's cloud division, CT Cloud.[18]   As discussed previously in "Foreign Companies In Texas Infrastructure"; Akamai Technologies is merged with a Chinese company and is "involved in" Texas' election infrastructure in more than one junction.

57.     CIS furthers confirms the partnership with Akamai in an August 1, 2022.[19] See *Appendix 7*, Decl. of Terpsehore Maras, Lines 129, 135 (*Appendix 8*), and TEX. ELEC. CODE Chap. 2274.

**58.**     The #Protect2020 Strategic Plan posted in February of 2020 by CISA and DHS outlines the federal government's campaign for the general election of 2020.   (State and

---

[18] Akamai and China Unicom Establish Strategic Cloud Services Partnership. https://www.prnewswire.com/news-releases/akamai-and-china-unicom-establish-strategic-cloud-services-partnership-300088898.html

[19] Akamai Enterprise Threat Protector. https://www.cisecurity.org/services/cis-cybermarket/software/akamai-enterprise-threat-protector

Local Election Authorities, Election Technology Vendors, Campaigns and Political Infrastructure, American Electorate).[20] See *Appendix 9* Declaration of Shawn Smith).

59. This guide illustrates the assault on U.S. Const. Art. 1 Sec 4 and privacy rights of the Petitioners with implantation of the federal government in Texas' election at the local level.

60. CISA's partners have now expanded to a number of federal agencies some with a direct election-related mandate while other adapting from traditional roles to election security.[21]

61. CIS and Cybersecurity firm CrowdStrike announced on November 5, 2021 it's partnering to provide a slate of security services to U.S. State, Local, Tribal and Territorial (SLTT) governments. "The new CIS Endpoint Security Services (ESS) platform, which is backed by Crowdstrike's tools, is built to identify, detect, and respond to security alerts from local governments.[22]

62. CrowdStrike's Falcon system will offer ESS users deployments onto endpoint devices to include USB device monitoring and host-based firewall management. CrowdStrike has previously worked with CIS on Elections Infrastructure and this partnership will see them provide a fully managed 24/7/365 next-generation cybersecurity offering tailored to SLTT to include more than 12,000 Multi-State Information and Analysis Center mem-

---

[20] ESI Strategic Plan. https://www.cisa.gov/sites/default/files/publications/ESI%20Strategic%20Plan_FINAL%202.7.20%20508.pdf

[21] Id. pg. 7

[22] CIS Partners with Crowdstrike. https://www.zdnet.com/article/cis-partners-with-crowdstrike-on-cybersecurity-platform-protecting-local-governments/

bers across the US, with more than 14 million endpoints in total.[23] (See *Appendix 10* Declaration of John R. Mills).

63.    The Secretary of State's 2022 Election Security update[24] outlines current practices as well as legislation associated with election security including the participation of "most Texas counties" in EI-ISAC. (See *Appendix 11* Declaration of Douglas Logan).

_____

[23] Id.

[24] Texas Election Security Update. https://www.sos.texas.gov/elections/conducting/security-update.shtml

# VI.   ARGUMENTS AND AUTHORITIES

66.   *The Federalist No.* 59, reasoned that unless Congress had authority to regulate Senate and House elections, state legislatures might "at any moment annihilate [the U. S. government], by neglecting to provide for the choice of persons to administer its affairs": noting that the Elections Clause gave state legislatures primary power over Senate and House Elections.

67.   DHS cannot nor by Presidential executive order; impose election laws or enforce a "federal" authority on the states regarding elections.

> "Who are to pass the laws for regulating elections?  The congress of the United States, composed of a senate chosen by the state legislatures, and of representatives chosen by the people of the states.  Can it be imagined, that these persons will combine to defraud their constituents of their rights, or to overthrow the state authorities, or the state influence?"  Joseph Story, Commentaries on the Constitution of the United States § 826 (1833).

68.   Judge Story's commentary echoes Hamilton's expectation as representatives of states and their people, Members of Congress would be reluctant to impose election laws on objecting states.  This theory has been tested as recently as last year in H.R. 1: For the People Act of 2021.

69.   H.R. 1 was to expand voter registration (e.g. automatic and same-day registration), and voting access (e.g., vote-by-mail and early voting).  It also limits removing voters from voter rolls.  Additionally, the bill set forth provisions related to election security, including sharing intelligence information with state election officials, supporting states in securing their election systems, developing a national strategy to protect

U.S. democratic institutions, establishing in the legislative branch the "National Commission to Protect United States Democratic Institutions", and other provisions to improve the cybersecurity of election systems.

70. Congress rejected this encroachment of federalization of elections. If Congress did not enact election cybersecurity law, then the federal government by way of DHS invading Texas' elections is unconstitutional and Defendants that have imposed such intrusion are derelict in their duty violating Petitioners' privacy and voting rights.

71. Art. I Sec. 4 of the Constitution makes clear that only the legislatures of the States have authority to amend or nullify election statues. *Bush II,* 531 U.S. at 104 (quoted supra). Non-legislative changes to State election law by SoS or County election officials are in violation of Art. 1 Sec. 4 of the U.S. Constitution.

72. Texas requires a voter to register in order to participate in state and federal elections within the state. TEX. ELEC. CODE § 11.002(a)(6).

73. The Texas voter registration form instructs prospective voters to provide at least the following information: name, residence and postal address, any previous voter registration address in Texas, county of residence, date of birth, previous name, driver's license number, or last four digits of social security number, and date of application. The applicant is further required to affirm that they: reside in the stated county and are a citizen of the United States, have not been convicted of a felony, or if a felony-have completed all punishment; and have not been determined by court to be mentally incapacitated.

74.    The private information acquired by CIS via DHS is not widely available in Texas, but instead may be released only under certain circumstances and conditions imposed by Texas' voting laws.  TEX. ELEC. CODE § 18.066.  Seeking large scale voter information are only permitted to access certain data contained in Texas' computerized voter registration files and only upon certain conditions.    TEX. ELEC. CODE § 18.066(d).

75.    Requesting individuals or entities may obtain the limited, redacted information from the voter files only after (i) they pay a fee and (ii) they execute a notarized affidavit with the Elections Division of the Secretary of State's office stating that they will not use the data in certain enumerated, proscribed ways.  TEX. ELEC. CODE § 18.066.  The affidavit from the requesting party must state "that the person will not use the information obtained in connection with advertising or promoting commercial products or services." TEX. ELEC. CODE § 18.066(d).  CIS Security currently has posted all SLT governments currently utilizing services and products.

76.    Respondents have provided CIS Security, DHS, federal and third-party partners access to computerized voter file fields, including full names of all registrants, addresses, dates of birth, voting history from at least 2017 onward, active/inactive status and whether a voter's registration has been cancelled, voting record (absentee, provisional, early, in-person), the party primaries for state and federal elections that the voter participated in, and the registration effective date.

77.    Even if confined to information generally available to candidates or other organi-

zations who are entitled to request voter information under Texas law, this would under-

mine, and run afoul of, the State's carefully-crafted regulation of the use of voter data.

78.    Firstly, the disclosure of private voter data under federal transparency require-

ments would enable widespread abuse of that information to the determent of Petitioners.

Respondents cannot provide assurances as to the voter data's use once it is collected by

federal agencies and their third-party vendors. 52 U.S.C. § 20507(a)(6).

79.    Secondly, voter birthdates threatens the privacy interest of Petitioners as Texas

courts have acknowledged, a citizen has an inherent privacy interest in his or her birth-

date, given that such date, in combination with other information that Respondents have

made available, can result in identity theft.   It is for that reason that Texas courts have

held that the disclosure of birth information constitutes a "clearly unwarranted invasion

of personal privacy."

80.    Texas courts have recognized a "nontrival privacy interest" in birth dates.  *See*

*Paxton v. City of Dallas,* No. 03-13-00546-CV, 2015 WAL3394061 at *3 (Tex. App. May

22, 2015) (concluding that "public citzens have a privacy interest in their birth dates"),

reviewed denied (Sept. 4, 2015); *Tex. Comptroller of Pub. Accounts v. Att'y Gen. of Tex.,*

354 S.W.3d 336, 346-48 (Tex. 2010)(holding that disclosure of state employee birth dates

constituted a "clearly unwarranted invasion of personal privacy"), *See also Tex. Att'y*

*Gen. Op*. OR2017-06026 (2017) ("Based on *Texas Comptroller,* the court of appeals [in

*City of Dallas*] concluded the privacy rights of public employees apply equally to public

citizens, and thus, public citizens' dates of birth are also protected by common-law privacy…")

81.     Under the common-law right of privacy, an individual has a right to be free from the publicizing of private affairs in which the public has not legitimate concern. *Industrial Found.*, 540 S.W. 2d at 682; *see also Abbott v. Dallas Area Rapid Transit*, 410 S.W.3d 876, 880 (Tex. App.—Austin 2013, no pet.). Petitioners have an expectation of privacy when registering to vote.

82.     The Texas Supreme Court acknowledged in *Texas Comptroller* that the disclosure of "[birth] dates, when combined with name and place of birth, can reveal social security numbers." 354 S.W.3d at 345.

83.     Respondents acknowledge that by participating with DHS/CIS, they provided certain information including voter names, addresses, date of birth and registration, voting methods, voter status, and the elections (including primaries) in which specific voters have participated.

84.     The disclosure of birth dates included in the access provided have and will continue to violate Texas and Federal law and the rights of Petitioners.  Furthermore, the combination of the identifying information, combination of birth dates and physical address, creates a greater risk of harassment and intimidation.  Once Petitioners information becomes publicly available, the uses and purposes other entities have for it will be beyond the control of Respondents.

85.     Thus, by providing unilateral unlimited access to Texas' voter rolls or its information over to CIS Security, DHS and federal and third-party partners, Respondents would be sanctioning the disclosure of information regarding Petitioners to private firms and federal agencies, who could use such data without limitation and to the detriment of the privacy and associational rights of Texas voters.

**86.**     Petitioners do not consent to DHS and affiliated federal agencies (CISA, NSA, FBI, FEMA) in our election infrastructure.  This overreach of power provides access to private information, including voting records. The expectation of privacy held by voters, is that private personal information will provide voters the right to vote within their local counties.

**87.**     The contracts agreed to by Dallas officials have allowed for private voters' data to be shared with federal and foreign entities.    Respondents cannot sidestep Texas law or U.S. Constitution simply because the CIS Security and DHS request it to be so in the name of security.

88.     Petitioners do not and did not consent to have our private and personal information shared with federal entities or have federal entities dictating guidelines for how local and state elections are to be run.

89.     The Texas State Election Code does not provide or authorize any election official either at the local or executive government level to "federalize" state elections.

90.     Respondents have significantly overreached their authority and violated Petitioners' rights to vote in a free and fair election by knowingly providing access to Petitioners'

personal data via the State of Texas' voter registration database to the federal government via DHS and affiliated federal agency "partners".

91.     This blatant disregard for the rule of law renders all voting constitutionally tainted. By allowing for the inclusion of federal agencies in Texas elections, Respondents are in violation of U.S. Const. Art. 1 Sec. 4, Fourth Amendment of the U.S. Const., Privacy Act of 1974 by usurping state legislative authority.

92.     Furthermore, Texas codified HAVA. It is the intent of the legislature that the application of this code and the conduct of elections be uniform and consistent throughout this state to reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted. TEX. ELEC. CODE § 1.0015. Election officials and other public officials shall strictly construe the provisions of this code to effect the intent of the legislature under Section 1.0015. TEX. ELEC. CODE § 1.003(a-1).

93.     Specifically, Texas Election Code § 122.001(a)(3) states "operates safely, efficiently, and accurately and complies with the voting system standards adopted by the Election Assistance Commission," and § 122.001(a)(4) stipulates "is safe from fraudulent or unauthorized manipulation." Under HAVA 2002 (42 U.S.C. §15371(b)) "requires that the EAC provide for the accreditation and revocation of accreditation of independent, non-federal laboratories qualified to test voting systems to Federal standards".

94.     Respondents made a choice to approve, adopt, and purchase uncertified, non-compliant election voting equipment that do not adhere to the standards set forth in Title

8 of the Texas Election Code and violate the legislative intent. (TEX. ELEC. CODE §§ 1.0015, 123.001, and 123.002, Appendix 5 and 6).

95.     Respondents, knowing the law, were knowingly negligent in their duties and have violated constitutional provisions and statutes through their ignoring the expiration of certifications of accreditation of VSTLs or the lack of legal signature per HAVA thereby allowing voting machines to be used in elections since 2020 violating TEX. ELEC. CODE § 122.032, TEX. ADMIN. CODE § 81.60 and § 81.61, which are violations of TEX. CONST. art. VI §§ 2 and 4 and federal 52 U.S.C. 20971, First, Fifth, Fourteenth, and Fifteenth Amendments .

96.     Respondents acting under the color of law allowed for the use of uncertified, non-compliant voting system equipment, software, and modifications for elections occurring in Dallas County in 2021 and 2022 violating TEX. ELEC. CODE §§ 122.001, 122.032, 123.001, 123.002, TEX. ADMIN. CODE § 81.60 and § 81.61, which are violations of TEX. CONST. art. VI §§ 2 and 4, and 52 U.S.C. 20971, First, Fifth, Fourteenth, and Fifteenth Amendments.

97.     Furthermore, election officials must preserve election information and such information must be transparent to the citizens if democracy and a constitutional republic are to be upheld. 52 U.S.C. § 20701, TEX. ELEC. CODE § 1.013. Electronic, software, and firmware updates render election records unrecoverable.

98.     Merely going through the motions of voting is not voting; furthermore, electing the person(s) one chooses to be a representative servant in official capacity is not "mere

voting," but the highest duty of all citizens striving for the preservation of the Republican form of government through the consent of the governed (U.S. CONST. art. IV § 4).

99.   Pretending to vote on systems that do not meet the standards of law is much like pretending to get educated at an uncertified university. While everyone attending this university may have injury, the individual's specific injury will be unique to the individual's specific life and having the lack of genuine credentials effects the individual's employability, finances, health, and overall well-being.

100.   Similarly, Respondents caused injury to Petitioners by causing Petitioners to vote on uncertified, non-compliant systems and devices.   Petitioners' vote lacked the credentials and was caused to be cast illegally (TEX. ELEC. CODE § 276.013), which has led to the installation of representatives rather than a true election by the people of the people and for the people. Were Petitioners' illegal votes counted, or were Petitioners' illegal votes not counted in accordance with legislative intent (TEX. ELEC. CODE § 1.0015)? These are questions that demand answers.

101.   Respondents knowingly approved voting system/equipment, software, and modifications unlawfully, which deprives Petitioner constitutionally protected interests without due process of law.

102.   Such deprivation occurred after Respondents had open communications with voting vendors and the EAC in which Respondents did not disclose to the public and gave no notice or meaningful opportunity for open public discussion regarding defects of voting equipment/software to the Petitioner prior to certifications.

103.     Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the Texas and Federal laws and other applicable laws. (See Accardi Doctrine). Such deprivation violates the U.S. Constitution thereby depriving Petitioner civil rights regarding casting a "legal" vote. TEX. PEN. CODE § 37.03, § 37.10.

104.     The Respondents have adopted, approved, and purchased an illegal, unconstitutional form of vote collection, which has already disenfranchised millions of voters who have been caused to vote illegally.

105.     Petitioners were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering forced contracts with representatives through deceptive practices and fraudulent certifications.

## A.     REMEDIABLE RIGHTS

103.     It is our constitutional duty to invoke our authority as free persons to petition and address this court regardless of the outcome of this complaint, it serves as notice to all acting officials and non-officials within our government that we demand justice for any and all criminal behavior and fraud.

104.     'When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right.' *Baker v. Carr* 369 US 186, 208 (1962) citing 364 U.S. at 347, 81 S.Ct. at 130.57.

105.    "The right to vote is a "natural right" in our society. *Thomas v. Groebl*, 147 Tex. 70, 212 S.W.2d 625, 630 (1948). This right and the integrity of the voting process must be zealously protected." *Thompson v. Willis*, 881 S.W.2d 221, 225 (Tex. App. 1994).

106.    "The right to vote is the "preservative of all rights." *Shelby County v. Holder*, 570 U.S. 529, 566 (2013) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886))." *In re State*, No. 20-0394, at *10 n.33 (Tex. May 27, 2020).

107.    It is an undeniable feature of our political system and tradition that an "individual's right to vote . . . is protected as a fundamental right." *Veasey v. Perry*, No. 13-CV-00193, 2014 WL 5090258, at *41 (S.D.Tex. Oct. 9, 2014), stayed by 769 F.3d 890 (5th Cir. (Tex.) Oct. 14, 2014) (citing *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992); *Kusper v. Pontikes*, 414 U.S. 51, 55 (1973)). *Cuellar v. Maldonado*, No. 13-14-00491-CV, at *7 (Tex. App. Mar. 5, 2015).

108.    "Although the terms "citizens" and "residents" are perhaps more precise (or less confusing) in cases involving a public duty, these types of cases reflect that community stakeholders — citizens, residents, voters, and taxpayers — are injured when their local governments do not follow the law. Where a public duty is at stake, a plaintiff's membership in the community provides the necessary standing to bring a cause of action to ensure a local government follows the law. See *Arneson v. Bd. of Trustees of Employees' Retirement System of Ga.*, 257 Ga. 579, 579-580 (1)-(3) (361 SE2d 805) (1987) at 580 (2) (c) ("Public responsibility demands public scrutiny.")… Voters may be injured when elections are not administered according to the law or when elected officials fail to follow the voters' referendum for increased taxes to fund a particular project, so voters may have standing to vindicate public rights. See, e.g., *Barrow v. Raffensperger*, 308 Ga. 660, 667 (2) (b) (842 SE2d 884)(2020) (plaintiff's claim that cancellation of election violated the law was a sufficient injury to a voter, even without an injury that was "special" to her, for voter to have standing to bring mandamus claim to compel election); *Rothschild v. Columbus*

*Consol. Govt.*, 285 Ga. 477, 479-480 (678 SE2d 76) (2009) (plaintiffs' allegations that defendants failed to perform public duty promised to voters was sufficient to establish standing)." *Sons of Confederate Veterans, et.al. v. Henry County Board of Commissioners*, No. S22G0039. AND *Sons of Confederate Veterans, et.al. v. Newton County Board of Commissioners*, No. S22G0045. GA Sup. Court October 25, 2022.

**B.    FAILURES, NEGLECT, AND OFFENSIVE VIOLATIONS**

UNDER 42 U.S.C. § 1985, 42 U.S.C. § 1986, GUARANTEE CLAUSE,

28.                                   U.S.C. § 1367

109.    Respondents, Honorable Clay Jenkins and Michael Scarpello, have violated state and federal law with violations that include:

a.    Approving and adopting operating systems lacking proper certifications.

b.    Allowing for unmonitored network communications.

c.    Restricting access to public information.

d.    Concealing and refusing to release voting system software/firmware versions.

e.    Once informed of any problematic issues with voting systems/software, proceeded with elections without informing the public nor issued any public statement as the malfunction continued to affect casting of ballots during the election.

f.    Impeded election workers and staff from the ability to "detect and punish fraud and preserve the purity of the ballot box." Randomized ballot numbers prevented recording, violating, and tracking the official ballot serial number ranges in possession of, personally distributed, and retained at polling locations, violating TEX. CONST. art. VI § 4.

g.    Certified not only the November 3, 2020, election results but every subsequent election after receiving evidence from constituents that cast doubt on the integrity of the ballot.

h.    Knowingly remiss in their duties, acting under the color of law, and are in violation of Texas statute. These officials did not acknowledge the expiration of certification of accreditations of VSTLs nor the lack of legal signature per HAVA,

thereby continuing to allow these voting machines to be used in county elections since 2020. What is confirmed is that Pro V& V and SLI Compliance were ***Not Accredited*** VSTL. *(Emphasis added)*

i.  Under the guise of 'protecting the vote', Respondents with undisputed knowledge of HAVA have nefariously sought to suppress the violations of federal and state law from Petitioner. After multiple attempts in the form of PIA(s), the county actors have attempted to conceal public information regarding the voting equipment and software utilized in the election process.

j.  Officials and employees, under the directive of the SoS office, withheld from the public that the malfunctions of the voting equipment/software were not resolved but were, in fact, affecting multiply counties during the elections.

k.  Acting under the color of law, administered elections with non HAVA complaint voting system equipment, software, and modifications for the state of Texas that have been used in state and federal elections from 2020 through 2022, violating TEX. ELEC. CODE §§ 1.003(a-1), 122.001, 122.032, 123.001, 123.002, TEX. ADMIN. CODE § 81.60 and § 81.61, and are violations of TEX. CONST. art. VI § 2 and § 4 and federal 52 U.S.C. 20971, First, Fifth, Fourteenth, and Fifteenth Amendments of the U.S. Constitution.

l.  By Officials' own admission via the State of Texas' Secretary of State website regarding education of the HAVA, they knowingly approved voting system equipment, software, and modification without a valid VSTL accreditation from the EAC.

m.  Respondents' duplicitous activity and arrangement seem to only exist for a singular self-serving purpose of covering misdeeds and offenses.

n.  Respondents, non-legislative actors, actively marketed and promoted the federalization of Texas elections via DHS and affiliated federal agency "partners" to our local and state governments.

o.  Respondents', non-legislative actors, illegally authorized the monitored and provided access to personal and private information to federal agencies via DHS vio-

lating of U.S. Const. Art. 1 Sec. 4, Fourth Amendment of the U.S. Const., Privacy Act of 1974.

p.    Respondents' duplicitous activity and arrangement seem to only exist for a singular self-serving purpose of covering misdeeds and offenses.

q.    Respondents' defiance of Election Code knowingly caused the Petitioners, registered voters of Texas; to cast a vote

    i.    Under false pretense TEX. ELEC. CODE § 276.013(1)

    ii.    Prevent a cast of a legal vote in which Petitioners are eligible to vote TEX. ELEC. CODE § 276.013(2)

    iii.    Cause the ballot not to reflect the intent of the Petitioners/voters TEX. ELEC. CODE § 276.013(6)

    iv.    Respondents committed the offense while acting in the capacity of an elected official TEX. ELEC. CODE § 276.013(b)(1)

r.    Respondents have, by their actions, demonstrated an intention to continue to allow these same failures to be repeated in future elections.

## C.    EMERGENCY RELIEF IS NECESSARY

110.    The Constitution requires that elections be free, fair, and accurately counted. Furthermore, Petitioners' matter in not merely an infraction against constitutionally-protected rights that occurred in the past, but an ongoing violation against Petitioners' federally and constitutionally-protected voting rights through the utilization of EVS that do not adhere to legislated standards (TEX. ELEC. CODE §§ 1.003(a-1), 1.0015, 122.001, 123.001, 123.002).

111.    Due to irreparable harm to Petitioners' as Respondents caused their intellectual property (our votes) to be stolen and their identity (privacy information) to be compromised, under principles of the balance of equity, Petitioners are entitled to emergency re-

lief. TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

112.    The only way to prevent the violations against Petitioners' First, Fourth, Fifth, Fourteenth, and Fifteenth Amendment rights is to refrain from using vulnerable Electronic Voting Systems to administer future elections.

113.    The relief requested by Petitioner is the only way to eliminate the discrimination, voting rights violations, privacy rights violations, and deprivation of constitutional rights from occurring in Dallas County elections via EVS and their related devices and equipment. Accordingly, emergency relief is appropriate and necessary to remedy the impending violations of Petitioners' constitutional rights.

114.    "[W]hen a constitutional violation is likely ... the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." Id. (internal quotation marks omitted); see also *Obama for Am. v. Husted*,697 F.3d 423, 436 (6th Cir.2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty*.,274 F.3d 377, 400 (6th Cir.2001). *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty*., 796 F.3d 636, 649 (6th Cir. 2015).

115.    Due to irreparable harm to Petitioner's personal intellectual property (my vote) and under principles of the balance of equity, Petitioner is entitled to and intends to file a petition for permanent writ of injunction to supplement this amended petition. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

## D.    COUNTS

### COUNT I - Violation of Due Process
### UNDER 42 U.S.C. § 1983, 28 U.S.C. §1331dp
### (First and Fourteenth Amendments)

(Seeking declaratory and injunctive relief against All Respondents)

116.    Petitioner incorporates the foregoing paragraphs as if set forth in full herein: In order establish a claim under section 1983 of the Civil Rights Act, a Petitioner must prove a Respondent: (a) acted under the color of state law; (b) proximately causing; (c) the Petitioner to be deprived of a federally protected right. *42 U.S.C. § 1983.* For this matter, Respondents violated the federally protected rights of voting, *18 U.S.C. 245,* and privacy, *5 U.S.C. § 552.* In the instant case, Respondents unquestionably acted under the color of state and federal law. Each Individual Respondent is an official with the authority of duties pursuant to the United States and Texas Constitution and Statutes for the State of Texas.

117.    The Free Speech Clause of the First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." See U.S. Const. amend. 1. The Free Speech Clause applies to the states by way of the Fourteenth Amendment. See *Snyder v. Phelps*, 580 F.3d 206, 214 n.4 (4th Cir. 2009) (citing *Stromberg v. California*, 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)). That short but forceful phrase has given rise to a complex array of legal protections for free expression, which the courts have flexibly applied in a variety of circumstances. Those precedents establish that the First Amendment protects speech

along a spectrum, so that "[l]aws that impinge upon speech receive different levels

of judicial scrutiny depending on the type of regulation and the justifications and

purposes underlying it." See *Stuart v. Camnitz* , 774 F.3d 238, 244 (4th Cir. 2014).

*Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019).

118.     Since at least 2020, we have been **Forced** to continue this illegal practice

by our own government due to their reckless disregard for the law and constitution.

Our only remedy thus far has been:

a.  Notify the proper authorities in Dallas County and our state government in pur-

suant with TEX. ELEC. CODE § 273 in which the Petitioner has made  attempts

for over a year.

b.  Not to participate in unlawful elections and thereby denied our right to vote as our

last alternative.

c.  Seek legal means via the Peoples' court.

119.     This brings us here today as we seek redress of our First, Fourth, Fifth, Four-

teenth, and Fifteenth amendment rights under 42 U.S.C. § 1983, "taking on the mantel

of the sovereign," guarding for all of us the individual liberties enunciated in the Con-

stitution. Section 1983 represents a balancing feature in our governmental structure

whereby individual citizens are encouraged to police those who are charged with polic-

ing us all. Thus, it is of special import that suits brought under this statute be resolved

by a determination of the truth rather than by a determination that the truth shall remain

hidden." *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973).

**COUNT II - Violation of Equal Protection Clause**
**UNDER 42 U.S.C. § 1983, 18 U.S.C. § 245**
**(Fourteenth and Fifteenth Amendment)**

(Seeking declaratory and injunctive relief against All Respondents)

120.   Petitioner incorporates the foregoing paragraphs as if set forth in full herein: Under the Fourteenth Amendment of the Constitution, and as established by state law, including the state created Accardi Doctrine, Petitioner has a fundamental right to cast a ballot and vote in a legal and fair election. Under the Fifteenth Amendment to the Constitution, the right to vote for each citizen of the United States shall not be denied or abridged by any state on account of servitude by those in power without due process of law.

121.   Petitioner is entitled to free and fair elections of our representatives, affirmed by the U.S. Constitution, Article 1, without invasion of our private information. In *Rice v. Cayetano*[25], the Court ruled the Fifteenth Amendment, "...reaffirms the equality of races at the most basic level of the democratic process, the exercise of the voting franchise." The Court did not specify the Fifteenth Amendment applies only to a protected class, but rather it applies to everyone.[26]

122.   Even if the Fifteenth Amendment did not apply to everyone, voters constitute a protected class under the Constitutional conception for our society for the consent of the governed (Declaration of Independence, U.S. CONST. art. IV § 4 and art. VI, TEX. CONST. art. I § 2).

---

[25] https://uscode.house.gov/view.xhtml?req=(title:18%20section:245%20edition:prelim)%20OR%20(granuleid:USC-prelim-title18-section245)&f=treesort&num=0&edition=prelim

[26] http://cdn.loc.gov/service/ll/usrep/usrep528/usrep528495/usrep528495.pdf

123. As part of their sworn duty (TEX. CONST. art. XVI § 1), our elected officials have an imperative responsibility to guarantee protection of the election process from any form of fraud or profiteering as this could lead to discrimination of voters, regardless of classification. The discrimination occurs as Texans are separated into the "ruling class" and the "commoners" through unlawful voting methods and procedures.

124. Respondents continued to certify election results knowing they violated civil liberties subsequently forcing Petitioners into fraudulent contracts with illegally elected government officials: providing said officials with unlawful power to enforce actions under the color of law coercing and subjecting Petitioners into servitude in which our liberty to determine our own course and way of life has been strong-armed from us (U.S. CONST. amend. 13).

125. Additionally, when elected officials fail to provide the level of protection necessary to secure the election franchise (TEX. ELEC. CODE § 123.002), it is the right and duty of the American people to correct this deficiency. The Court cannot deny this Right to the people even when the injury is widespread.

126. Failure to perform their sworn duty has allowed discrimination to occur across the equality of races in the State of Texas. This violates the Right to Vote Clause of the Fifteenth Amendment.

127. Furthermore, by failing to protect against private interference (i.e.: vendor voting systems, Scytl, et al) of the election process by not adhering to Federal election/voting system certification standards (HAVA 2002), and the most basic cyber security defense and hardening frameworks, Respondents failed to comply with 18 U.S.C. § 245(1)(a).

128.   Therefore, Respondents do not comply with the Enforcement Clause of the Fifteenth Amendment. Petitioner was harmed and continue to be irreparably harmed by these unlawful acts, including by suffering forced contract with representatives through deceptive practices and fraudulent certifications. *TEX. ELEC. CODE § 276.013(a)(4).*

## COUNT III – Deprivation of Civil Rights
## UNDER 42 U.S.C. § 1983vp, 42 U.S.C. § 1985

### (First, Fifth, and Fourteenth Amendments)

(Seeking declaratory and injunctive relief against All Respondents)

129.   Petitioner incorporates the foregoing paragraphs as if set forth in full herein: Article I § 13 of the Texas Constitution provides, "All courts shall be open, and every person, for an injury done him, in his land, goods, person, or reputation, shall have remedy by due course of law."

130.   The Fifth and Fourteenth Amendments U.S. Constitution affords the people of Texas with the right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law (TEX. CONST. art. I § 19 and § 29).

131.   Petitioners have constitutionally protected interests to use their intellectual expression to cast a vote for the representative of their choosing and not being subject to the illegal voting systems/equipment, software, and modifications. This includes the ability to pursue our First Amendment right to legal elections without being subjected to casting illegal votes in violation of both state and federal laws.

132.   Each day Petitioner has suffered irreparable harm living under a government that no longer represents we the people and deprives the Petitioner, and all voters of the state

of Texas, of the Republic that the Constitution of the State of Texas and United States Constitution outlined as protection from a tyrannical government.

133.     The general public benefits from the remedy against the constitutional infringements where any citizen can bring a case before the court as long as it impacts the public interest, and benefits the general public, not just the Petitioner. *Assoc. Indus. of New York v. Ickes,* 134 F.2d 694, 704 (2d Cir. 1943).

**COUNT IV – Deprivation of Constitutional Rights**
**UNDER 28 U.S.C. 1331vc, 42 U.S.C. § 1986, Declaration of Independence, Preamble to the U.S. Constitution, First, Fourth, Fifth, Fourteenth, and Fifteenth Amendments)**

(Seeking declaratory and injunctive relief against All Respondents)

134.     Petitioner incorporates the foregoing paragraphs as if set forth in full herein: Petitioner has a fundamental right to cast a vote in a legal and fair election in which their vote is their intellectual property.

135.     Petitioner was harmed and continue to be irreparably harmed by these unlawful acts, including by suffering forced contracts with representatives through deceptive practices and fraudulent certifications. *TEX. PEN. CODE §39.03(2).*

136.     "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Hernandez*, 872 F.3d at 994-95.

137.     "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Lackey v. State*, 638 S.W.2d 439, 467 (Tex. Crim. App. 1982). "The judiciary has a historic duty to uphold constitutional pro-

tections of individual liberties." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 472 (Tex. 2012).

138. The Courts recognize the necessity of prohibiting a State (or subdivision thereof) from exploiting a power to justify the imposition of an "unconstitutional condition." "Acts generally lawful may become unlawful when done to accomplish an unlawful end, *United States v. Reading Co*., 226 U.S. 324, 357, and a constitutional power cannot be used by way of condition to attain an unconstitutional result." *Western Union Telegraph Co. v. Foster*, 247 U.S. 105, 114. *Gomillion v. Lightfoot*, 364 U.S. 339, 347-48 (1960).

## COUNT V – Voting Rights Violation
## UNDER 52 U.S.C. § 20510, 52 U.S.C. §10101, 52 U.S.C. § 20507(a)(6), 28 U.S.C. § 1943
### (First, Fourteenth, and Fifteenth Amendment)
(Seeking declaratory and injunctive relief against All Respondents)

139. Petitioner incorporates the foregoing paragraphs as if set forth in full herein: In order to establish a claim under 52 U.S.C. § 10101(a)(2)(B): (1) the proscribed conduct must be engaged in by a person who is "acting under color of law" [Respondents]; (2) it must have the effect of "deny[ing]" an individual "the right to vote" [TEX. ELEC. CODE §§ 1.0015 and 276.013]; (3) this denial must be attributable to "an error or omission on [a] record or paper" [TEX. ADMIN. CODE § 81.60 and § 81.61, TEX. ELEC. CODE § 123.001]; (4) the "record or paper" must be "related to [an] application, registration, or **other act requisite to voting**" [TEX. ELEC. CODE §§ 122.001(a)(3) and 123.001, 52 U.S.C. § 20507(a)(6)]; and (5) the error or omission must not be "material in determining whether such individual is qualified under State law to vote in such election [TEX. ELEC. CODE §§ 13.001 and 13.002]." Ritter v. MiglioriI, 142 S. Ct. 1824, 1825 (2022).

140.     Under 52 U.S.C. § 20510, a Petitioner must prove a Respondents: (a) acted under the color of state law; (b) proximately causing; (c) the Petitioner to be deprived of a federally protected right. *42 U.S.C. §1983.* In the instant case, Respondents unquestionably acted under the color of state and federal law. Each Individual Respondent is an official with the authority of duties pursuant to Texas Constitution and Statues for the State of Texas. Under the First, Fourteenth, and Fifteenth Amendment to the Constitution, and as established by state law including the state created Accardi Doctrine, Petitioners have a fundamental right to cast a ballot and have their votes counted in a legal and fair election. Petitioners were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering forced contract with representatives through deceptive practices and fraudulent certifications. *TEX. PEN. CODE § 39.02.*

141.     The immediate injury continues as Texas officials continue to allow us to vote in another election conducted on uncertified and networked machines is a violation of our First, Fourteenth, and Fifteenth amendment rights and a violation of TEX. ELEC. CODE § 122.01(3)(4), § 123.001, § 123.002, § 129.054(a)(b)(c), § 122.031(c), 52 U.S.C. § 20510.   The Petitioner stands to lose more of our freedoms as each day passes without resolution.

142.     We, the people, have the Right to elect our representatives. We, the people, have the Right to ensure elections are free and fair. We are not just ensured the Right to CAST the vote. We, the people, are guaranteed the Right to ELECT our government. This entire process must be guaranteed. Anything that circumvents that process is inherently infring-

ing upon the Right we are granted to pursue life, liberty, and the pursuit of happiness. (U.S. CONST art. IV § 4, TEX. CONST. art. I § 19).

### COUNT VI – Civil Action for Deprivation of Rights
### UNDER 5 U.S.C. § 552pa, 52 U.S.C. § 20507(a)(6), 42 U.S.C. § 1983vp, 42 U.S.C. § 1986
### Election Clause – Right to Privacy
### U.S. CONST. art. 1 § 4 and Fourth Amendment
(Seeking declaratory and injunctive relief against All Defendants)

143.    Petitioners incorporate the foregoing paragraphs as set forth in full herein: the foregoing violations have occurred as a consequence of Respondent acting under color of state and U.S. Constitutional law. Accordingly, Petitioners bring this cause of action for prospective equitable relief against Respondents pursuant to 5 U.S.C. § 552, 42 U.S.C. § 1983 and 42 U.S.C. § 1986.

144.    Art. 1 § 4 of U.S. Const. provides, the authority of states to establish and regulate the times, places, and manners and laws of holding elections; state legislatures hold ultimate power over federal encroachment in regards to elections.

145.    The Fourth Amendment of the U.S. Constitution is the right of a person's reasonable expectation of privacy. Non-legislative actors lack authority to amend or nullify election statutes. *Bush II*, 531 U.S. at 104 (quoted supra).

146.    The conscious and express actions of Respondents, to nullify or ignore election statutes violates the Election Clause and Privacy by requiring Petitioners to "register" to vote on a system that is monitored unlawfully by federal agencies and "partners" providing access to private and personal information as defined by TEX. ELEC. CODE § 13.004, have and will continue to violated the rights of Petitioners under the Constitution of the United States.

147.   By requiring Petitioners to vote on systems that are being monitored by the federal government, Respondents have and will violate the rights of Petitioners under the Constitution of the United States.

148.   This Court has jurisdiction to grant injunctive relief base on 28 U.S.C. § 1343 authority. Unless Respondents are enjoined by this Court, then Petitioners will have no adequate legal, administrative, or other remedy by which to prevent or minimize the irreparable, imminent injury that is threatened by Respondents' intended conduct. Accordingly, appropriate damages and injunctive relief against these Respondents is warranted.

**COUNT VII – Declaratory Judgment**
**UNDER 28 U.S.C. § 2201, § 2202**
(Against All Respondents)

149.   Petitioner incorporates the foregoing paragraphs as set forth in full herein: Respondents conduct has and will continue to violate the rights of citizens of Texas, as set forth above. The Court has the authority pursuant to 28 U.S.C. § 2201, § 2202 to issue an Order enjoining the State from conducting further elections in which the votes are not accurately or securely tabulated. If Dallas County proceeds with elections as described above, it will continue to violate the rights of Texans by conducting an uncertified, non-compliant EVS that are susceptible to invasion of privacy and intrusion. The Court should issue an Order enjoining the State from using any electronic voting system and its respective devices to include, but not limited, to poll pads, tabulators, printers, etc.

150.   Furthermore, immediate and irreparable injury, loss, or damage will result to Petitioner if the requested relief against the destruction of the election records from the 2020

general election, 2021 constitutional election, 2022 primaries, and current 2022 November election does not occur.

151.    The Court should issue order enjoining officials from the spoliation, destruction, alteration of all records including, but not limited to: paper ballot, absentee ballots, tabulation databases, adjudication databases, pollbook databases, election definition files, scanned ballot images, cast vote records, logic and accuracy testing results, logs and reports stored on all electronic, election equipment (including, but not limited to the Election Management System (EMS), client workstations, pollbooks, tabulators, Direct Recording Electronic (DRE) devices, Ballot Marking Devices (BMD), and Election Night Reporting (ENR)archives, project database backups, and any other form of backups). TEX. ELEC. CODE § 66.02, § 66.058; and further, to order a thorough independent forensic examination of each ballot by highly qualified document examiners, will serve to restore the public's confidence in the state's election process. See *Karen Wiseman v. Tarrant County, Texas and Heider Garcia* (2021) No. 096-330696-21, Texas.

### VII.    CONCLUSION

152.    Respondents knowingly allowed the release of private information to foreign and federal entities, as well as caused Texans to vote on noncompliant machines that were not certified due to lack of accredited VSTL(s) since at least the November 3, 2020 elections in violation of the Texas Election Code, Title 8.

153.    This onerous conduct renders the results void. The Respondents continued to certify election results knowing they violated Texans' civil liberties, subsequently forcing Petitioner(s) into fraudulent contracts with illegally elected government officials. Offi-

cials were provided unlawful power to enforce actions under the color of law and used this power to coerce and subject Petitioners into servitude through unlawful elections. Petitioners' liberty to determine our own course and way of life has been strong-armed from us.

154.    Respondents have "no authority to pass upon the question of negligence or freedom from negligence.  He has no discretion but is obliged to act as the law provides." *DeVries v. Secretary of State,* 329 Mich.  68 (1950).  44 N.W.2d 872.

155.    *Sherar v. Cullen,* 481 F 946 (1973), "There can be no sanction or penalty imposed upon one because of this exercise of constitutional rights." "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron,* 358 U.S. 1, 78 S. Ct. 1401 (1958).

156.    Although Respondents may assert immunity against these claims, the Constitutional theory is that we the people are the sovereigns, the state and federal officials only our agents. As Judge P. Higginbotham dissented, "the 11th Amendment does not bar these claims under the 14th Amendment… The role of the Court in protecting the most vital right of a democratic government: the right to vote; should not be denying the right to vote." *Texas Alliance for Retired Americans; Sylvia Bruni; DSCC; DCCC v. Scott Secretary of State 20-40643 March 16, 2022. United States Court of Appeals, Fifth Circuit.*

157.    We maintain a right to defend ourselves and others from attack. We also maintain the same right to defend our election process when it is subject to profiteering by actors who would seek to abolish our sovereignty in favor of a dictatorship. We, the people, carry this Right and every other Right in the same manner we would a physical firearm.

Every single Right we enjoy, as affirmed in the Constitution, is a weapon and protection against tyranny. A violation of the Right to Vote is a violation of all Rights.

## VIII.   PRAYER FOR RELIEF

158.   WHEREFORE, "For there is no authority except from God, and the authorities that exist are appointed by God." *Romans 13:1* (NKJV). Petitioner prays that the Court grant the following relief:

    a.   ASSUMES jurisdiction of this action in the interest of justice. 28 U.S.C. §§ 1331, 1343, 1367.

    b.   ISSUES and EXPEDITES judgment. Rule 501, TEX. GOV. CODE §§ 23.301, 23. 302;

    c.   Vacates and sets aside all uncertified and illegal voting systems/equipment, software, and modifications and implement a precinct level hand-marked paper ballot and hand counting system as permissible by Tex. Elec. Code Chp 65.

    d.   DECLARES that the Respondents have violated the Texas Constitution Equal Protection Clause; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

    e.   DECLARES that the Respondents have violated the Texas Constitution Due Process Clause; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

    f.   GRANTS a permanent injunction prohibiting Respondents from requiring or permitting voters to have votes cast or tabulated using any electronic voting systems, pollbooks, or devices. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

    g.   GRANTS a permanent injunction prohibiting Respondents from destruction/ deletion of any and all election records created under Title 8 of the Tex. Elec Code to include all paper ballots created by voting systems, USB devices, memory cards, electronic storage devices, mail in ballots, tabulation tapes, USB final counts from precincts and all other election records not specifically stated from the 2020, 2021, and 2022 elections. TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure Rule 65.

    h.   DECLARES that the Respondents approvals/adoptions of all voting system/ equipment, software, and modifications are void and without legal force or effect; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

i.   DECLARES that the Respondents approval/adoption policies are arbitrary, capricious, and based on negligence and disregard, in accordance with law and without observance of both the required procedure and Accardi Doctrine; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

j.   DECLARES that the approvals/adoptions and the actions taken by Respondents are in violation of the Constitution and contrary to the laws of the United States and the State of Texas; 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

k.   Permanently enjoins Respondents, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing and/or enforcing the certifications of all voting systems/ equipment, software and modifications that are not in compliance with the applicable law; TEX. CIV. PRAC. & REM. CODE § 65.011, TEX. GOV. CODE § 23.302, TEX. ELEC. CODE § 273.081, 28 U.S.C. § 1343(a)(3) and Federal Rule of Civil Procedure 65.

l.   ORDERS to unseal absentee ballots, absentee ballot return envelopes, the absentee ballot election reports, and other paper and electronic information election materials from the General Election 2020 and to permit Petitioner to review, examine, inspect, and duplicate such materials including, but not limited to electronic images of electronic drives used by Respondents in the General Election; TEX. GOV. CODE Chp. 552

m.   ORDERS Respondents to terminate all employees, agents, and contractors shown to have had knowledge of or acquiesced in the improper acts described herein;

n.   Enter a preliminary and permanent injunction prohibiting Defendants from permitting the Center for Internet Security, Inc. in contract by the Department of Homeland Security from operating in any aspect of Texas election infrastructure.

o.   Declare that the Defendants' Memorandums of Understanding/Agreements with Center for Internet Security, Inc. operating in contract by the Department of Homeland Security void and without legal force or effect.

p.   Declare that the Center for Internet Security, Inc. in connection with the Department of Homeland Security are arbitrary, capricious and based on negligence and disregard in accordance with law.

q.   Declare that the certifications and the actions taken by Defendants are in violation of the Constitution and contrary to the laws of the United States and

the State of Texas violating of the Election Clause (U.S. Constitution Art. 1 Sec. 4).

r.  Temporarily restrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing and/or enforcing the MOU/Contracts with CIS/DHS of monitoring of election infrastructure and removal of all "Albert Sensors" or any other monitoring products that is not in compliance with the applicable law, and

s.  Grant such other and further relief as may be just, equitable, and proper, including, without limitation, an award of any attorneys' fees and costs to Petitioner.

Respectfully submitted this 11th day of November, 2022.

By: /s/ *Allyson Raskin*
ALLYSON RASKIN
214-263-5802
essentiallyally@gmail.com
5533 Meletio Lane
Dallas, TX 75230

Anne Stone

4308 Alta Vista Ln.

Dallas, TX 75229-2837

(214) 532-4561

annelindastone@gmail.com

Barry Wernick

6544 Dykes Way

Dallas, TX 75230

(917) 604-5895

bazza@barrywernick.com
*Pro se Petitioners*

## CERTIFICATE OF SERVICE

I certify that, on November 11, 2022, a copy of this Amended Complaint was served on Counsel for the Respondents by ECF.

DATED: November 11, 2022.

/s/ *Allyson Raskin*

ALLYSON RASKIN

**Affidavit**

Pursuant to 28 U.S.C. 1746, I, ALLYSON RASKIN, make the following declaration:

Affiant supports in writing a cause that demonstrates Respondents' actions as outlined above in this complaint/petition violate several state and federal laws, which are against The People of Texas, and also , against the peace and dignity of the State.


1. I voted in the 2020 election and I am not confident that my vote counted.

2. On March 1, 2022, I personally went to Dallas County Central Count to poll watch during the 2020 primary and was told that they didn't need me and they wouldn't allow me back.

3. On June 23, 2022, I went to central count to watch a "random audit" after the June 2020 municipal election. I watched them count the paper ballots. Then I asked to watch them true up that manual count to the thumb drive data and was told no after asking many times. I have no idea if the paper ballots matched the electronic votes.

4. I was told by 2 election judges that the data in the ePoll book during the 2022 Primary election was changing all throughout the day. They weren't sure what was going on, but it did not look right.

5. I was poll greeting at several locations during this November 2022 mid-term elections. During Election Day I was at a site where the tabulator stopped working and then I heard of several other locations that this also happened. People started leaving the voting center because they didn't know if their vote would be counted. Also, a few friends that were working in the voter centers saw first hand that after the polls closed, the ePoll books started jumping by numbers of voters by the hundreds. Everyone working the polls that I spoke to said that they have serious concerns that votes were being counted properly.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this AUGUST 1, 2022


Affiant: /s/ *Allyson Raskin*

ALLYSON RASKIN

5533 Meletio Lane

Dallas, TX 75230

**Affidavit**

Pursuant to 28 U.S.C. 1746, I, ANNE STONE, make the following declaration:

Affiant supports in writing a cause that demonstrates Respondents' actions as outlined above in this complaint/petition violate several state and federal laws, which are against The People of Texas, and against the peace and dignity of the State.


1. I worked as a clerk at a polling location on November 3, 2020, in Dallas, TX.  When I arrived our DS200 tabulator would not turn on.  I pulled the instruction manual from the internet via a simple google search.  It provided all information for the machine.  We had a tech come throughout the day to confirm poll books were connected to the internet.  I do not have confidence that these machines and the internet connection were secure.

2. I voted in the 2020 election.  I am not confident that my vote was properly counted.

3. I worked on a campaign and with volunteers throughout the 2022 midterm early voting and general election.  On Election Day, there were continuous reports by our volunteers of DS200s shutting down throughout the day.  Marsh Lane Baptist location closed at 4PM on election day because their machines were down.

4. I became a precinct chair in 2022. In my official capacity I don't have confidence that when I ask people to go vote that their vote will be counted. I feel disingenuous asking people to vote on the current system.

5. It was reported by election judges to me that the ePoll books during the 2022 midterm general election were adding voters by hundreds to over a thousand per poll book at their polling locations. This causes grave concerns about the validity of our 2022 midterm election in Dallas, TX.

6. I have no confidence of election integrity in our 2022 midterm election. The machines are not certified.  I have no idea what the bar code represents my printed ballot.  I have zero confidence that my vote is protected or is represented correctly.  I also question the validity of the Pro V&V certification of our machines in 2020.  We have been forced to vote on machines that have not been legally certified.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this November 11th, 2022.

Affiant: /s/ *Anne Stone*

Anne Stone

4308 Alta Vista Lane

Dallas, TX 75229

**Affidavit**

Pursuant to 28 U.S.C. 1746, I, BARRY WERNICK, make the following declaration:

Affiant supports in writing a cause that demonstrates Respondents' actions as outlined above in this complaint/petition violate several state and federal laws, which are against The People of Texas, and against the peace and dignity of the State.

1. For the 2022 Midterm General and Joint Elections, I worked as an alternate election judge to set up an election day polling location in Dallas, Texas on November 7, 2022, and I worked on set up and throughout the election day at another voting site in Lancaster, Texas on November 8, 2022. I noticed that both locations, although in separate parts of Dallas County, were provided in advance with the same preset passwords for their respective routers to connect to the Internet and for their ePoll Books to connect to the Internet. I confirmed with several other judges of the same election in other parts of Dallas County that they were provided with the same passwords for their respective routers and ePoll Books. Cloud based systems are already vulnerable to cyber attacks. The electronic systems become even more vulnerable to such attacks when every voting site and the Dallas County Elections Office use the same passwords. Several times throughout the election day, our ePoll Books were not connected to the Cloud. During these times when the clerks and judges were not aware of the disconnection to Dallas County Elections Department, people who voted could have gone to other locations (or even to another clerk in the same voting site) and voted again as the system does not update that a person has checked in to vote unless the ePoll Book is connected to the Cloud which connects to the Dallas County Elections Department. Further, there are many names of non-eligible voters in the ePoll Books (e.g. those who had been mailed a ballot, those who had already voted, those who were deceased, etc.) whose status can be cured through a number of ways. If such ePoll Books were hacked, or if someone had other ways to access to the ePoll Books, these non-eligible voters could be turned into eligible voters. These are just a few of reasons why serving as a judge at a voting site has left me less confident in the election system as I do not have confidence that these electronic voting systems used for Dallas County elections and their Internet connections were secure.

2. When I ran as a candidate for Dallas City Council District 11 run-off election in the spring of 2021, my niece voted for me on May 24, 2021 utilizing the electronic voting system machine at a voting site in Dallas, Texas. After early voting I made a public information request for a list of all people who had early voted in the election, and as expected my niece's name was included in the list. After the election day. I made another public information request to get a list of all people who voted in the election (i.e. early voters and election day voters). To my surprise her name was no longer included on the list. When I called the Dallas County Election Department to ask why her name had been removed from the list of voters, the response from the person working in the office was that I should not worry because it was just a mistake and that she's certain that my niece's vote counted. For this reason, my niece and many others including myself who know this

story about what happened lack confidence in the electronic voting systems utilized by Dallas County.

3. As a Candidate in the 2021 City Council Elections I was told by many of my supporters that they lacked confidence in whether their votes would be counted as they had intended to vote. Many voters told me that even if the name of the person whom they voted for was printed out on the ballot, they lacked confidence that the barcode that is scanned would reflect that name properly. This same lack of confidence in what is actually scanned and then transmitted to a flash drive was echoed by voters at the polling location where I served as an alternate judge in Lancaster, Texas on November 8, 2022.

4. As an alternate election judge in Lancaster, Texas, many times throughout the day people who are not tech savvy or fearful of electronics not only told me they lacked confidence in electronic voting systems but stopped voting altogether as they either found it too difficult to manage the system to vote thereby taking more time than many had anticipated, especially older voters and those who had to get back to work. Several times voters who were so frustrated with having to go through the ballot two or three or more times due to the ballot not printing properly or printing blank ballots, they eventually gave up and left the voting site without voting.

5. After serving as an alternate judge during the 2022 Midterm General and Joint Elections, I have learned that the machines we use have not been certified. As such, I have questions whether any vote on these electronic voting system machines are legal and whether any votes, including mine, on these machines are valid and should be counted.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed this November 11th, 2022.




Affiant: /s/ *Barry Wernick*

Barry Wernick

6544 Dykes Way

Dallas, TX 75230

# **APPENDIX**

1. Deployment of Additional Election Systems cyber-monitoring capabilities

2. Memorandum of Agreement for Cybersecurity Services

3. Federalization of Texas Elections

4. Report of Review of ES&S EVS 6.0.2.0

5. Election System & Software (ES&S) Voting Systems Problems

6. Accreditation and Certifications

7. Foreign Companies in Texas Infrastructure: Scytl and Election Night Reporting (ENR)

8. Declaration of Terpsehore P Maras

9. Declaration of Shawn Smith

10. Declaration of John R. Mills

11. Declaration of Douglas Logan