## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ALLYSON RASKIN, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:22-CV-2012-E-BH** |
| | § | |
| HONORABLE CLAY JENKINS, | § | |
| DALLAS COUNTY JUDGE and | § | |
| MICHAEL SCARPELLO, | § | |
| DALLAS COUNTY ELECTIONS | § | |
| ADMINISTRATOR, | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, *Defendants' Response to Plaintiff's First Amended Complaint*, which moves to dismiss the plaintiff's first amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), filed on November 23, 2022 (doc. 22), should be **GRANTED**; *Petitioner's Opposed Motion for Emergency Injunction*, filed on November 17, 2022 (doc. 18), should be **DENIED**; *Plaintiff's* [sic] *Memorandum in Support of Opposed Motion for Joinder of Parties*, filed on November 22, 2022 (doc. 19), and *Defendants' Motions Opposing Joinder of Plaintiffs and Defendants and to Strike Declarations and Affidavits from Plaintiff's First Amended Complaint*, filed on November 23, 2022 (doc. 23), should be **DENIED as moot**.

## I.   BACKGROUND

Allyson Raskin (Plaintiff) is a voter registered in Dallas County, Texas, who voted in the 2020 election.  (doc. 34 at 61.)[2]  She sues Dallas County Judge Clay Jenkins and Dallas County

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Elections Administrator Michael Scarpello (Defendants) for violations of her civil rights and various state and federal laws, alleging that they knowingly administered elections with voting system equipment that was not properly certified, unreliable, and vulnerable to hacking and unauthorized access, in violation of state and federal election laws. (*Id.* at 40-42.)

A.      **Factual Background**

Plaintiff's 66-page amended complaint, which includes a 441-page appendix[3] and adds two proposed plaintiffs, contends that "[s]ince at least the 2020 general election, Dallas County approved, adopted, and purchase [sic] computerized election equipment that was not properly certified as required by Texas legislative statutes, which then violates constitutional provisions for elections and voting." (*Id.* at 10-11; *see also* doc. 17.) "Substandard equipment is vulnerable and the true results of an election that relies upon unlawful equipment can never be known with full confidence." (doc. 34 at 11-13.) Defendants allegedly "have consulted, voted, and approved a memorandum of understanding/agreement with the Department of Homeland Security (DHS) through the Center of Information Security (CIS)" in violation of the Elections Clause, which has caused private information to be released unlawfully. (*Id.* at 11.) Additionally, "through the use of Electronic Voting Systems (EVS)," elections have been outsourced to third-party vendors or various federal agencies without Plaintiff's consent, and "[t]his overreach of power provides access to private information, including voting records." (*Id.*)

According to the amended complaint, "DHS has infiltrated all aspects of Dallas County's election processes" through the Elections Infrastructure Information Sharing and Analysis Center

---

[3] The appendix, which was filed only with Plaintiff's stricken first amended complaint, includes Dallas County Commissioners Court records and memoranda of agreement, multiple unattributed documents that appear to be taken from filings in *Strongin v. Scott*, No. 4:22-CV-576-P-BJ (N.D. Tex. 2022), a report of review from the Texas Secretary of State, and affidavits and sworn declarations of third parties filed in similar electronic voting machine lawsuits. (doc. 17.)

(EI-ISAC) launched by the Election Infrastructure Subsector Government Coordinating Council (EIS-GCC) in March 2018, and through the Center for Internet Security, Inc., with which Dallas County contracted on October 19, 2018, in preparation for the 2018 general election, and on June 16, 2020, for cellphone, modem, and scanner connectivity. (*Id.* at 21-22.) After Election System and Software (ES&S) presented the Texas Secretary of State with EVS version 6.0.2.0 for examination and certification, the Secretary of State notified Dallas County in April 2019 that version 6.0.2.0 was certified for use in elections in Texas. (*See id.* at 23.) The laboratory that approved the certification was not accredited in accordance with a 2015 voting system manual. (*See id.* at 24.) Dallas County "contracted with ES&S for a regional transmission hardware and software for election night results," and with another entity for election night reporting, a partner of which "merged with a Chinese company" in 2015 and "is 'involved in' Texas' election infrastructure in more than one junction." (*Id.* at 24-26.) The amended complaint alleges that the "contracts agreed to by Dallas officials have allowed for private voters' data to be shared with federal and foreign entities." (*Id.* at 34.) It also claims that a guide "outlin[ing] the federal government's campaign for the general election of 2020" implants "the federal government in Texas' election at the local level." (*Id.* at 26-27.)

Defendants allegedly "have provided CIS Security [sic], DHS, federal and third-party partners access to computerized voter file fields[,]" which "would undermine, and run afoul of, the State's carefully-crafted regulation of the use of voter data." (*Id.* at 31-32.) The amended complaint claim that Defendants "would be sanctioning the disclosure of information regarding Petitioners to private firms and federal agencies, who could use such data without limitation and to the detriment of the privacy and associational rights of Texas voters." (*Id.* at 34.) It also contends that Defendants "ignor[ed] the expiration of certifications of accreditation of VSTLs [voting system

test laboratories] or the lack of legal signature per HAVA [the Help America Votes Act] thereby allowing voting machines to be used in elections since 2020," and "allowed for the use of uncertified, non-compliant voting system equipment, software, and modifications for elections occurring in Dallas County in 2021 and 2022[.]" (*Id.* at 36.)

Plaintiff's sworn declaration,[4] which is attached to the amended complaint, states that she voted in the 2020 election and is "not confident that [her] vote counted." (*Id.* at 61.) She was not allowed to "poll watch" during the 2022 primary election or to observe the manual count of ballots at a "random audit" after a municipal election, and two election judges told her that "the data in the ePoll book during the 2022 Primary election was changing all throughout the day" and "did not look right." (*Id.*) She was at a site during Election Day "where the tabulator stopped working and then [she] heard of several other locations that this also happened," and "[p]eople started leaving the voting center because they didn't know if their vote would be counted." (*Id.*) A sworn declaration by one proposed plaintiff states that she does "not have confidence that these machines [tabulators] and the internet connection were secure" at a polling location during Election Day 2020, she is "not confident that [her] vote was properly counted" in the 2020 election, she has "no confidence of election integrity in our 2022 midterm election . . .[and] zero confidence that [her] vote is protected or is represented correctly," and "[w]e have been forced to vote on machines that have not been legally certified." (*Id.* at 62.) A second states that he and others "lack confidence in the electronic voting systems utilized by Dallas County" based on his experiences as an alternate election judge in 2022 and a city council candidate in 2021. (*Id.* at 64-65.)

The amended complaint generally contends that Defendants "knowingly approved voting system/equipment, software, and modifications unlawfully, which deprives Petitioner

---

[4] Plaintiff's "Affidavit" was not notarized or sworn before a notary; it was expressly made under penalty of perjury pursuant to 28 U.S.C. § 1746. (doc. 34 at 61.)

constitutionally protected interests"; Defendants "have adopted, approved, and purchased an illegal, unconstitutional form of vote collection, which has already disenfranchised millions of voters who have been caused to vote illegally"; and Plaintiff was "harmed and continue[s] to be irreparably harmed by these unlawful acts, including by suffering forced contracts with representatives through deceptive practices and fraudulent certifications." (*Id.* at 37-38.) It alleges due process violations under the First, Fourth, Fifth, Fourteenth, and Fifteenth Amendments; violations of equal protection under the Fourteenth and Fifteenth Amendments and 18 U.S.C. § 245; deprivation of civil rights under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the First, Fifth, and Fifteenth Amendments; deprivation of constitutional rights under 42 U.S.C. § 1986, the Declaration of Independence, the Preamble to the U.S. Constitution, and the First, Fourth, Fifth, Fourteenth, and Fifteenth Amendments; voting rights violations under 52 U.S.C. §§ 10101, 20507(a)(6), and 20510 of the Voting Rights Act, and 28 U.S.C. § 1343;[5] and deprivation of rights under 5 U.S.C. § 522, 52 U.S.C. § 20507(a)(6), § 1983, § 1986, the Election Clause, Article 1, § 4 of the U.S. Constitution, and the Fourth Amendment. (*Id.* at 13-14, 44-54.) It also asserts claims for injunctive and declaratory relief under 28 U.S.C. §§ 1342, and 2201-02. (*Id.* at 53-54.) Its enumerated counts also appear to incorporate various violations of the Texas Constitution and the Texas Election Code. (*Id.* at 44-54.)

Plaintiff seeks a judgment declaring that Defendants' approval or adoption of electronic voting systems was unconstitutional and in violation of state and federal laws, and that Defendants' contracts or agreements relating to same are void and without legal force or effect; a court order

---

[5] The amended complaint pleads a claim under 28 U.S.C. § 1943. (doc. 34 at 50.) This provision of Title 28 does not exist, however. Because Plaintiff cites to § 1343, which relates in part to the recovery of damages or equitable relief under statutes "providing for the protection of civil rights, including the right to vote," elsewhere in the amended complaint, her amended complaint is liberally construed as intending to instead reference § 1343. 28 U.S.C. § 1343(a)(4); (*see* doc. 34 at 14-15, 43, 53.)

that vacates and removes all uncertified and illegal voting systems, implements paper ballot voting and a hand-counting audit system, and requires the termination of involved parties and the inspection of past ballots; and an injunction that prohibits the use of electronic voting systems in future elections, the destruction of election records, and the implementation or enforcement of contracts or agreements relating to monitoring of election infrastructure. (*See id.* at 56-58.)

**B.    Procedural History**

Plaintiff filed her original petition in state court on August 2, 2022. (*See* doc. 1-3 at 1-55.) After removing the case to federal court, on September 19, 2022, Defendants moved to dismiss it. (doc. 3.) On November 2, 2022, it was recommended that Plaintiff's claims be dismissed without prejudice for lack of subject matter jurisdiction, but she was offered an opportunity to amend to address jurisdictional deficiencies. (doc. 15 at 15.) Because she filed her first amended complaint on November 11, 2022, Defendants' motion to dismiss was denied as moot. (docs. 16, 43.)

On November 17, 2022, Plaintiff filed an emergency motion for an injunction to enjoin Defendants from certifying the November 8, 2022 election results. (doc. 18.) On November 22, 2022, she filed a motion to join parties. (doc. 19.) The next day, Defendants moved to dismiss the amended complaint, to dismiss the parties Plaintiff proposed to join (who were also named in the amended complaint), and to strike the declarations from the amended complaint. (docs. 22-23.) On November 28, 2022, Plaintiff filed a reply to Defendants' motions opposing joinder and to strike, and Defendants objected to her motion for an injunction. (docs. 24, 27.) On December 3, 2022, Plaintiff filed a reply in support of an injunction. (doc. 32.) On December 6, 2022, she filed a corrected first amended complaint, and on December 9, 2022, she responded to Defendants'

motion to dismiss.[6] (docs. 34-35.) On December 14, 2022, Defendants filed over 3,000 pages of unofficial precinct results for the 2022 general election. (doc. 36.)

## II.    RULE 12(b)(1)

Defendants first move to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction.  (doc. 22 at 14-16.)

## A.    <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent

---

[6] Plaintiff's prior amended complaint was stricken from the record because it failed to comply with the Local Civil Rules for the Northern District of Texas. (docs. 26, 28.) On December 5, 2022, she was granted leave to file her corrected amended complaint. (doc. 33.)

the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*.[7]

Here, Defendants rely solely on Plaintiff's amended complaint in support of their motion. The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13.

## B.    <u>Standing</u>

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Like other jurisdictional requirements, this requirement is "not subject to waiver," *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996), and the Supreme Court "insist[s] on strict compliance"

---

[7] It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Regardless of whether the plaintiff is proceeding *pro se* or represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

with it, *Raines*, 521 U.S. at 819. "Even when standing is not raised by the parties, the Court must, where necessary, raise the issue *sua sponte*." *Reed v. Rawlings*, No. 3:18-CV-1032-B, 2018 WL 5113143, at *3 (N.D. Tex. Oct. 19, 2018) (citing *Collins v. Mnuchin*, 896 F.3d 640, 654 n.83 (5th Cir. 2018)); *see also Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 n.2 (5th Cir. 2018) (citing *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010)). Courts are also to assess a plaintiff's "standing to bring each of its claims against each defendant." *Coastal Habitat All. v. Patterson*, 601 F. Supp. 2d 868, 877 (W.D. Tex. 2008) (citing *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001)), *aff'd*, 385 F. App'x 358 (5th Cir. 2010)).

To satisfy the prerequisites of Article III standing, "[the] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements[, and when] a case is at the pleading stage, the plaintiff must 'clearly... allege facts demonstrating' each element." *Id.* (citations omitted); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) ("The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."). While "'at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing," *Stallworth v. Bryant*, 936 F.3d 224, 230 (5th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560), "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing," *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). "[I]f the plaintiff does not carry his burden clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the

dispute, then dismissal for lack of standing is appropriate." *Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (citing *Steel Co.*, 523 U.S. at 103). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560) (quotations omitted). A "particularized" injury "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. A "concrete" injury actually exists, which means it is real and not abstract. *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)).

## C.    <u>Generalized Grievances</u>

Defendants contend that Plaintiff has not established standing to sue because she still alleges only generalized grievances, rather than concrete and particularized injuries that are separate from the public at large. (doc. 22 at 14-16.)

The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *see also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) ("A generalized grievance is a harm shared in substantially equal measure by all or a large class of citizens.") (citation omitted). In voting rights cases, plaintiffs must assert "a plain, direct and adequate interest in maintaining the effectiveness of their votes," and "not merely a claim of the right possessed by every citizen to require that the government be administered according to

law", to establish standing to sue. *Baker v. Carr*, 369 U.S. 186, 208 (1962) (citations and internal quotations omitted).

The United States Court of Appeals for the Fifth Circuit (Fifth Circuit) recently held that a claim "that drive-thru voting hurt the 'integrity' of the election was far too generalized to warrant standing." *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (quoting *Lance v. Coffman*, 549 U.S. 437, 441-42 (2007) (per curiam)). In that case, a Harris County voter and three candidates in the 2020 election sought a preliminary injunction to enjoin drive-thru voting in Harris County for future elections, contending that it violated the Equal Protection Clause and the Elections Clause of the United States Constitution. The district court found that the plaintiffs' "lack of a particularized grievance is fatal to their claim under the Equal Protection Clause" because their "general claim that Harris County's election is being administered differently than Texas's other counties does not rise to the level of the sort of particularized injury that the Supreme Court has required for constitutional standing in elections cases." *Hotze v. Hollins*, No. 4:20-CV-03709, 2020 WL 6437668, at *1 (S.D. Tex. Nov. 2, 2020), *aff'd in part and vacated in part*, 16 F.4th 1211 (citations omitted). It also held that the irreparable harm alleged by the plaintiffs, i.e., that "the Texas Election Code has been violated and that violation compromises the integrity of the voting process ... is a quintessential generalized grievance: the harm is to every citizen's interest in proper application of the law." *Id.* at *2 (citations omitted). Concluding that the plaintiffs ultimately failed to show they had "any specialized grievance beyond an interest in the integrity of the election process, which is 'common to all members of the public'", it denied their motion for preliminary injunction. *Id.* (quoting *United States v. Richardson*, 418 U.S. 166, 176-77 (1974)). The Fifth Circuit agreed, affirming the denial of injunctive relief and dismissal of plaintiffs' claims. *Hotze*, 16 F.4th at 1124 (citing *Lance*, 549 U.S. at 441-42).

Here, the amended complaint states that Plaintiff "(and all Texas citizens) have a fundamental legal right to the clearly established principles of election equality, integrity, accurateness, honesty, and justice", and that "[t]his case seeks to enforce these clearly established fundamental principles of Texas law." (doc. 34 at 10.) It generally alleges that Defendants violated state and federal law by authorizing and using electronic voting systems in Dallas County that are "uncertified and noncompliant," are substandard and vulnerable, and outsource local elections and release voters' private information to third parties; it alleges that "the uncertified, substandard systems and devices undermines [sic] the Elections by allowing unconstitutional votes to be counted[.]" (*Id.* at 11-12.) It also expressly bases "standing on an issue of fundamental public importance: voting, and the right to have their individual vote counted."[8] (*Id.* at 12.) It seeks declaratory and injunctive relief "that the [Defendants] adhere to the constitutionally protected process of collecting and counting votes that ensures integrity and transparency", which "is to require preservation of records, the removal of federal interference in Texas elections, sequentially-marked paper ballots, hand-counted by residents of the state of Texas, and following all Texas state election laws." (*Id.* at 13.)

As in *Hotze* and the original petition, Plaintiff has not asserted "any specialized grievance beyond an interest in the integrity of the election process, which is 'common to all members of the public.'" 2020 WL 6437668, at *2 (quoting *Richardson*, 418 U.S. at 176-77). Although this case

---

[8] The amended complaint also appears to rely on state court decisions to demonstrate standing. (doc. 34 at 12, 39-40.) The non-binding state decisions on which she relies did not concern Article III standing, however. *See, e.g.*, *Higgin v. Albence*, Nos. 2022-0641-NAC, 2022-0644-NAC, 2022 WL 4239590, at *1 (Del. Ch. Sept. 14, 2022) (stating that "the plaintiffs likely would not have standing under federal jurisprudence," and noting that "Delaware state courts are not bound by the federal standing doctrine"), *aff'd in part, rev'd in part*, 295 A.3d 1065 (Del. 2022); *Arneson v. Bd. of Trs. of Emps.' Ret. Sys. of Ga.*, 257 Ga. 579, 579 (Ga. 1987) (involving standing under OCGA § 9-6-24), *abrogated by Sons of Conf. Veterans v. Henry Cty. Bd. of Commr's*, 880 S.E.2d 168 (Ga. 2022) (involving standing under Georgia state law); *Barrow v. Raffensperger*, 308 Ga. 660, 667 (Ga. 2020) (involving OCGA § 9-6-24); *Rothschild v. Columbus Consol. Gov't*, 285 Ga. 477, 479-80 (Ga. 2009) (same). Because "standing in federal court is determined *entirely by Article III* and depends in no degree on whether standing exists under state law," they are not determinative of Article III standing here. *Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022) (citation omitted) (emphasis original).

does not involve drive-thru voting, the injury allegedly resulting from uncertified voting machines, vulnerabilities and deficiencies with electronic voting systems, and outside involvement in local elections resulting from the use of said systems, is widely shared by every Dallas County voter, just like the alleged injury widely shared by every Harris County voter in *Hotze*. "[S]uch a 'generalized grievance'—no matter how sincere—is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 694 (2013).

In her response, Plaintiff argues that she and the proposed plaintiffs "thoroughly demonstrate a vested interest in the quality, effectiveness, and accuracy of their individual votes", and "call into question the validity of the votes cast in all elections that occurred from 2020 to present because the electronic voting equipment and systems (EVS) utilized were not legally certified." (doc. 35 at 7.) She generally argues that because of the electronic voting systems used in Dallas County, she and the prospective plaintiffs have cast their votes on illegal ballots and "have been injured and will continue to be injured as our constitutional right to cast their voice, their vote free from dilution, manipulation, or counted as intended has been infringed upon by the all [sic] Defendants." (*Id.* at 9.) "[S]tanding to sue may not be predicated upon an interest ... which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Lance*, 549 U.S. at 441 (quotation omitted). As explained, a plaintiff's generalized grievance about the proper application of the Constitution and laws by government officials "does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74.

Plaintiff also argues that "[t]he grievances experienced by the Plaintiffs are individual and specific relative to their votes cast on the electronic voting equipment and systems that were not legally certified for use in the State of Texas thus granting Plaintiffs' standing before this Court," and that "[e]ach Plaintiff has endured his or her own individualized, tangible, specific injuries as

a result of election maladministration and malfeasance over the series of elections since 2020 due to leadership failing to uphold and defend the Constitution." (doc. 35 at 9-12 (footnote omitted).) She does not allege any injury that is distinct or different from the alleged injuries of all other voters who use electronic voting systems in Dallas County, however; nor does she seek relief that more directly and tangibly benefits her and the prospective plaintiffs than it does the general public. As discussed in the context of voting rights cases, "an alleged injury based solely on an allegation 'that the law ... has not been followed' amounts to an 'undifferentiated, generalized grievance about the conduct of government' insufficient to establish standing." *Hotze*, 16 F.4th at 1124 n.2 (quoting *Lance*, 549 U.S. at 442). Despite protestations that she and the proposed plaintiffs "are not the same as the general public; they know the voting machines are not legally certified," she has not alleged "any concrete harm that differentiates her from other voters in [Dallas County] or that the harm is imminent." (doc. 35 at 13-14); *Buras v. Hill*, No. 4:22-cv-753-SDJ-KPJ, 2023 WL 4290073, at *6 (E.D. Tex. May 19, 2023) (finding no differentiating concrete and imminent harm where the plaintiff only believed that her vote was not counted due to possible election interference with electronic voting systems in Texas), *rec. adopted*, 2023 WL 4234393 (E.D. Tex. June 28, 2023); *see also White v. Garcia*, No. 4:22-CV-00746-O-BP, 2022 WL 17968764, at *4 (N.D. Tex. Nov. 28, 2022) (finding that allegations "based on what might happen if Tarrant County's electronic voting system malfunctioned or was compromised by hackers or other destructive parties . . . do not amount to the 'imminent' injury required to confer standing."), *rec. adopted*, 2022 WL 17968757 (N.D. Tex. Dec. 27, 2022).

Because Plaintiff does not satisfy the requirements for Article III standing, her constitutional claims against Defendants should be dismissed without prejudice for lack of subject matter jurisdiction.

### III.    RULE 12(b)(6)

Defendants also move for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 22 at 16-24.)

### A.    <u>Legal Standard</u>

Rule 12(b)(6) allows dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12 (b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Iqbal*, 556 U.S. at 678 (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a

defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678. It is well-established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).

**B.      42 U.S.C. §§ 1985 and 1986**

The amended complaint appears to allege claims for the deprivation of rights under 42 U.S.C. §§ 1985 and 1986. (doc. 34 at 48-50, 52.)

Although Plaintiff does not identify the subsection of § 1985 under which she is suing, her claim is liberally construed as arising under subsection (3), which involves the deprivation of rights or privileges under the law.[9] 42 U.S.C. § 1985(3).  To state a claim, Plaintiff must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives her of a right or privilege of a United States citizen. *See Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). She must further allege that the conspirators were motivated by her race. *See Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("[I]n this circuit . . . the only conspiracies actionable under section 1983(3) are those motivated by racial animus.") (quoting *Deubert*, 820 F.2d at 757); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001).

---

[9] Subsections (1) and (2) of § 1985 respectively prohibit conspiracies preventing an officer from performing duties, and obstructing justice by intimidation of a court party, witness, or juror. 42 U.S.C. §§ 1985(1), (2). The amended complaint does not assert any allegations relating to these provisions.

Section 1986 "extends liability in damages to those persons 'who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985. . . are about to be committed, and having power to prevent or aid in prevention commission of the same, (neglect or refuse) so to do." *Bradt v. Smith*, 634 F.2d 796, 801-02 (5th Cir. 1981) (citing 42 U.S.C. § 1986) (parenthesis in *Bradt*). "This section on its face requires the existence of a valid claim under § 1985." *Id.* (citation omitted).

Here, even assuming for purposes of this motion only that the amended complaint may be liberally construed as alleging the existence of a conspiracy under § 1985, Plaintiff has not alleged any facts showing discrimination based on a suspect class for purposes of equal protection or that any alleged conspiracy was motivated by racial animus. She therefore fails to state a claim upon which relief may be granted under § 1985. Because § 1986 requires a valid claim under § 1985, she also fails to state a claim under § 1986. These claims should be dismissed.

## C.    5 U.S.C. § 552

In her first and sixth grounds, Plaintiff appears to assert claims for violation of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, et seq. (doc. 34 at 44, 52.) Section 552 of the FOIA applies only to federal agencies, and not to state or local agencies or individuals. 5 U.S.C. § 551 (defining "agency" as "each authority of the Government of the United States . . ."); 5 U.S.C. § 552; *see also Mouton v. Neustrom*, No. 2:15-cv-603, 2015 WL 13101827, at *1 (W.D. La. May 5, 2015) ("It is well established that the FOIA only applies to the actions of federal agencies and that the Act does not apply to the actions of state or local agencies or any individual defendant."), *appeal dismissed as frivolous*, 644 F. Appx. 287 (5th Cir. 2016). Because it does not apply to the state defendants in this case, the amended complaint fails to state a claim upon which relief may

be granted under the FOIA, and the claim should be dismissed. *See Mouton*, 644 F. App'x at 287.

**D.    Criminal Statute**

In her first and second counts, Plaintiff claims that Defendants violated her equal protection rights under 18 U.S.C. § 245. (doc. 34 at 44, 46-48.) Criminal statutes cannot be enforced in a civil action, however. "Private citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, No. 3:09-CV-1671-N, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 300 (5th Cir. 2003)). Because 18 U.S.C. § 245 is a federal criminal statute and does not provide a civil cause of action, Plaintiff fails to state a claim upon which relief may be granted under this statute, and her claim should be dismissed.

**E.    Voting Rights Provisions**

In her fifth and sixth grounds, Plaintiff alleges violations of statutory voting rights under §§ 10101(a)(2)(B), 20507(a)(6), and 20510. (doc. 34 at 50-52.)

Section 10101(a)(2)(B) states: "No person acting under color of law shall-- . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election[.]" 52 U.S.C. § 10101(a)(2)(B). Here, Plaintiff declares under penalty of perjury that she voted in the 2020 election; she alleges no facts showing that she was denied the right to vote in any preceding or following election. (doc. 34 at 61). Even assuming for purposes of this motion only that § 10101(a)(2)(B) provides for a private right of action for an alleged violation, Plaintiff fails to state a claim upon which relief may be granted under it.

Section 20507(a)(6) requires each state, in administering voter registration for federal

elections, to "ensure that the identity of the voter registration agency through which any particular voter is registered is not disclosed to the public." 52 U.S.C. § 20507(a)(6). Aside from generally citing § 20507(a)(6), the amended complaint does not allege any facts regarding the identity of Plaintiff's or anyone else's voter registration agency or Defendants' disclosure of same to any member of the public. In her reply, Plaintiff alleges that DHS monitors the Texas voter registration database through its contract with Center for Internet Security, that "[t]his database includes the voter registration agency of the voter and declination of those eligible to register to vote," and "CIS and DHS currently have contracts with third-party partners (public entities) which provides unilateral, unlimited access to Plaintiffs' personal and private information including all registration information." (doc.35 at 22.) Her mere reference to § 20507(a)(6) in the amended complaint, and the conclusory and formulaic allegations regarding the provision in her reply are insufficient to constitute well-pleaded facts that "nudge [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Any allegations under this provision also fail to state a claim for relief.

Under § 20510, which provides a private right of action for individuals aggrieved by violations of Chapter 205 of Title 52 relating to national voter registration, a plaintiff generally "must provide written notice of the violation [of Chapter 205] to the chief election official of the State involved," and allow for correction of the violation before filing a civil action. 52 U.S.C. § 20510(b)(1). Plaintiff alleges a violation of only § 20507 of Chapter 205, which fails for the reasons discussed, so she also fails to allege a claim on which relief can be granted under § 20510.

Plaintiff's claims under Title 52 should be dismissed for failure to state a claim.

## F.    <u>Private Rights of Action</u>

Plaintiff also appears to seek relief under the jurisdictional statutes set forth at 28 U.S.C.

19

§§ 1331, 1343 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. (doc. 34 at 44, 49-50, 53-54.) Neither the jurisdictional statute nor the Declaratory Judgment Act provides an independent cause of action, however. *See Shrimpers & Fishermen of RGV v. Tex. Comm'n on Envtl. Quality*, 968 F.3d 419, 427 (5th Cir. 2020) (Oldham, J., concurring) ("Section 1331 'does not create causes of action, but only confers jurisdiction to adjudicate those arising from other sources which satisfy its limiting provisions.'") (quoting *Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951)); *Miranda on behalf of M.M. v. Alexander*, No. CV21-535-JWD-RLB, 2022 WL 832576, at *16 (M.D. La. Feb. 24, 2022) ("As a jurisdictional statute, [Section 1343] does not provide 'a private right of action.'"), *rec. adopted*, 2022 WL 831430 (M.D. La. Mar. 18, 2022); *Braidwood Mgmt., Inc. v. E.E.O.C.*, 70 F.4th 914, 932 (5th Cir. 2023) ("Nor does the Declaratory Judgment Act provide an independent cause of action."). To the extent she asserts claims under these statutes, she fails to state a claim upon which relief may be granted, and the claims should be dismissed.

## IV.   INJUNCTIVE RELIEF

Plaintiff moves for an emergency injunction "barring [Defendants] from certification of the November 8, 2022, election results, which were conducted through unlawful computerized equipment to collect, store, count, and tabulate votes in violation of the Petitioners' voices, consent, and wills through elections[.]" (doc. 18 at 7-8; doc. 32 at 8.) Defendants responded that the motion was moot because the 2022 election precinct returns were certified on November 22, 2022. (doc. 24.) In her reply, Plaintiff argues in part that the motion is not moot because "future violations of the same degree are guaranteed" absent injunctive relief. (doc. 32 at 7.)

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555

U.S. 7, 24 (2008); *see also Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). To obtain a preliminary injunction, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) [that] the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) [that] granting the injunctive relief will not disserve the public interest." *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017) (citation and quotation omitted). The party seeking the preliminary injunction bears the burden of persuasion on all four requirements. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009). If the movant fails to carry the "heavy burden" to show each of the four prerequisites, a preliminary injunction is not warranted. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

As discussed, Plaintiff either lacks Article III standing or fails to state a claim upon which relief may be granted against Defendants, so her claims are subject to dismissal. She therefore cannot establish a likelihood of success on the merits of any of her claims, and her motion for an emergency injunction should be denied.

## V.    JOINDER OF PARTIES

Plaintiff moves to add four county commissioners as defendants in this action under Federal Rule of Civil Procedure 19, to add a proposed plaintiff under Rule 20, and to dismiss a proposed plaintiff under Rule 21. (doc. 19.) Defendants moved to dismiss the proposed defendants, who were also named in the amended complaint, and to strike the declarations of Plaintiff and the proposed plaintiffs from the amended complaint. (doc. 23.) Because the joinder or dismissal of the proposed parties and the declarations attached to the amended complaint do not impact the lack of standing or failure to state claims upon which relief may be granted in this action, as discussed, Plaintiff's motion for joinder and Defendants' motions to dismiss the proposed or joined parties

and to strike should be denied as moot.

## VI.   OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend her complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff was given an opportunity to amend her complaint to address its jurisdictional deficiencies. She has since amended her complaint and filed multiple motions relating to the allegations raised in her amended complaint. She also has filed a response to Defendants' motion to dismiss her amended complaint. As discussed, her claims are subject to dismissal either for lack of subject matter jurisdiction or for failure to state a claim upon which relief may be granted. It therefore appears that she has alleged her best case against Defendants, and no further opportunity to amend the complaint is warranted.

## VII.   RECOMMENDATION

The defendants' motion to dismiss the plaintiff's first amended complaint under Federal

Rule of Civil Procedure 12(b)(1) and 12(b)(6), filed on November 23, 2022 (doc. 22), should be **GRANTED**. Plaintiff's claims under 18 U.S.C. § 245; 42 U.S.C. §§ 1985, 1986; 52 U.S.C. §§ 10101, 20507(a)(6), and 20510; 5 U.S.C. § 522; 28 U.S.C. § 1343; and 28 U.S.C. §§ 1342, 2201-02 should be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Her remaining due process and equal protection claims, and any claims under the Texas Constitution and Texas Election Code,[10] should be **DISMISSED without prejudice** for lack of subject-matter jurisdiction. *Petitioner's Opposed Motion for Emergency Injunction*, filed on November 17, 2022 (doc. 18), should be **DENIED**. *Plaintiff's* [sic] *Memorandum in Support of Opposed Motion for Joinder of Parties*, filed on November 22, 2022 (doc. 19), and *Defendants' Motions Opposing Joinder of Plaintiffs and Defendants and to Strike Declarations and Affidavits from Plaintiff's First Amended Complaint*, filed on November 23, 2022 (doc. 23), should be **DENIED as moot**.

      **SIGNED** this 25th day of August, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10] Under 28 U.S.C. § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." To the extent the amended complaint may be liberally construed to allege independent claims for violations of state law, the claims are based on the same underlying events and form part of the same case or controversy as the federal claims, so supplemental jurisdiction exists over them.

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

24